## EX PARTE LANGE.

1. The doctrine of this court affirmed, and the cases in support of it cited, that' where a prisoner shows that he is held under a judgment of a Federal court, made without authority of law, the Supreme Court will, by writs of *habeas corpus* and *certiorari*, look into the record, so far as to ascertain that fact, and if it is found to be so, will discharge the prisoner.

2. The general principle asserted as applicable to both civil and criminal cases, that the judgments, orders, and decrees of the courts of this country are under their control during the term at which they are made; so that they may be set aside or modified as law and justice may require.

3. But it is also declared that this power cannot be so used as to violate the guarantees of personal rights found in the common law, and in the constitutions of the States and of the Union.

4. If there is anything settled in the jurisprudence of England and America, it is that no man shall be twice punished by judicial judgments for the same offence.

5. The provisions of the common law and of the Federal Constitution, that no man shall be twice placed in jeopardy of life or limb, are mainly designed to prevent a second punishment for the same crime or misdemeanor.

6. Hence, when a court has imposed fine *and* imprisonment, where the statute only conferred power to punish by fine *or* imprisonment, and the fine has been paid, it cannot, even during the same term, modify the judgment by imposing imprisonment instead of the former sentence.

7. The judgment of the court having been executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court as to that offence is at an end.

8. A second judgment on the same verdict is, under such circumstances, void for want of power, and it affords no authority to hold the party a prisoner, and he must be discharged.

ON petition for writs of habeas corpus and certiorari.

Edward Lange filed a petition to this court at a former day, praying for a writ of habeas corpus to the marshal for the Southern District of New York, on the allegation that he was unlawfully imprisoned under an order of the Circuit Court of the United States for that district. On consideration of the petition, the court was of opinion that the facts which it alleged very fairly raised the question whether the Circuit Court, in the sentence which it had pronounced, and

under which the prisoner was held, had not exceeded its powers. It therefore directed the writ to issue, accompanied also by a writ of certiorari, to bring before this court the proceedings in the Circuit Court under which the petitioner was restrained of his liberty.

From the record of the case in the Circuit Court, and the return of the marshal in whose custody the prisoner was found, the following facts appeared, and were stated, by the learned justice who delivered the opinion of the court, as the case :

"The petitioner had been indicted under an act of Congress, passed 8th June, 1872,* for stealing, purloining, embezzling, and appropriating to his own use certain mail-bags belonging to the Post-office Department. Upon the trial, on the 22d day of October, 1873, the jury found him guilty of appropriating to his own use mail-bags, the value of which was less than twenty-five dollars; the punishment for which offence, as provided in said statute, is imprisonment for not more than one year *or* a fine of not less than ten dollars nor more than two hundred dollars. On the 3d day of November, 1873, the judge presiding sentenced the petitioner under said conviction to one year's imprisonment, *and* to pay two hundred dollars fine. The petitioner was, on said day, committed to jail in execution of the sentence, and on the following day the fine was paid to the clerk of the court, who, in turn, and on the 7th day of November, 1873, paid the same into the Treasury of the United States.

"On the 8th day of the same month the prisoner was brought before the court on a writ of habeas corpus, the same judge presiding, and an order was entered vacating the former judgment, and the prisoner was again sentenced to one year's imprisonment from that date, and the return of the marshal to the writ of habeas corpus showed that it was under this latter judgment that he held the prisoner. It was conceded that all this was during the same term at which his trial took place before the jury. A second writ of habeas

---

* 17 Stat. at Large, 320, § 290.

corpus, issued by the circuit judge, was returned into the Circuit Court, when the two district judges sat with him on the hearing, and the writ was discharged and the petitioner remanded to the custody of the marshal."

*Mr. H. H. Arnoux, in support of the discharge,* made a full citation of cases, as well the British and Irish as our own, on the power of courts over their own judgments; certain of the cases denying all right to change the judgment after once enrolled; and made, further, an elaborate argument to prove that whatever its general power in the matter might be, the court in this case having imposed fine *and* imprisonment, and the fine having been paid, it could not, even during the term, modify the judgment as it had sought to do.

*Mr. C. H. Hill, Assistant Attorney-General, contra,* relied on the doctrine sufficiently long established, that during the term at which they are made, all courts have power over their judgments; arguing, moreover, that the judgment first rendered in this case being erroneous, was to be treated as void; in other words, as not entered, or no judgment; and that, therefore, the court could enter a valid judgment, and had done so in what it finally did. In support of his propositions, he relied much on the case of *Bassett* v. *United States,* decided by this court at December Term, 1869; in which it is said that "it is competent for good cause to set aside at the same term at which it was rendered a judgment of conviction on confession, though the defendant had entered upon the imprisonment ordered by the sentence."

The last judgment, he also said, though, perhaps, erroneous, was not void; and so no power to discharge existed.

Mr. Justice MILLER delivered the opinion of the court.

On consideration of the petition which was filed in this case at a former day, the court was of opinion that the facts therein recited very fairly raised the question whether the Circuit Court, in the sentence which it had pronounced, and under which the prisoner was held, had not exceeded its

powers. It therefore directed the writ to issue, accompanied also by a writ of certiorari, to bring before this court the proceedings in the Circuit Court under which the petitioner was restrained of his liberty. The authority of this court in such case, under the Constitution of the United States, and the fourteenth section of the Judiciary Act of 1789, to issue this writ, and to examine the proceedings in the inferior court, so far as may be necessary to ascertain whether that court has exceeded its authority, is no longer open to question. The cases cited in the note below* will, when examined, establish this proposition as far as judicial decision can establish it.

Disclaiming any assertion of a general power of review over the judgments of the inferior courts in criminal cases, by the use of the writ of habeas corpus or otherwise, we proceed to examine the case as disclosed by the record of the Circuit Court and the return of the marshal, in whose custody the prisoner is found, to ascertain whether it shows that the court below had any power to render the judgment by which the prisoner is held.

The first inquiry which presents itself is as to the nature and extent of the power of the Circuit Court over its own judgments in reversing, vacating, or modifying them.

We are furnished by counsel with a very full review of the cases in the English and American courts on the question of the power of courts over their judgments once rendered in criminal cases. Many of these decisions in the English courts are on writs of error and have but little bearing on the question before us. Others, which seem to present cases of judgments vacated or modified during the term at which they were rendered, are based upon the doctrines of the English courts, that there is no judgment or decree until the decree in chancery is enrolled or the judgment has

---

* Hamilton's Case, 3 Dallas, 17; Burford's Case, 3 Cranch, 448; Ex parte Bollman, 4 Id. 75; Ex parte Watkins, 3 Peters, 193; Same Case, 7 Id. 568; Ex parte Metzger, 5 Howard, 176; Ex parte Kaine, 14 Id. 103; Ex parte Wells, 18 Id. 307; Ex parte Milligan, 4 Wallace, 2; Ex parte McCardle, 6 Id. 318; Same Case, 7 Id. 506; Ex parte Yerger, 8 Id. 85.

been signed by the judge of the court of law, and become technically a part of the judgment roll.*

These decisions, some of which go to the extent of denying all right to amend or change the judgment after it becomes a part of the roll, are inapplicable to our system, where a judgment roll, strictly speaking, is no part, or, at least, not a necessary part of our system of judicial proceedings. In most, if not all, our courts a minute-book, or a record of the proceedings of the court, is kept, and is the appropriate repository of all the o ders and judgments of the court; and this book with all its entries is, *as a general rule*, under the complete control of the court during the term to which such entries relate.

The general power of the court over its own judgments, orders, and decrees, in both civil and criminal cases, during the existence of the term at which they are first made, is undeniable. And this is the extent of the proposition intended to be decided in the case of *Bassett* v. *United States.*†
That was a case like this, in which, in a prosecution for misdemeanor, the prisoner had been sentenced to imprisonment. But it was by a judgment rendered on confession. He was afterwards, during the same term, brought into court and the judgment vacated, his plea of guilty withdrawn, and leave given to plead anew; and then he gave bail and his case was continued. It was in an action on the bail-bond which he had forfeited, that the sureties raised the question of the right of the court to vacate the former judgment.

In general terms, without much consideration, for no counsel appeared for the sureties, this court sustained the right. If it was intended in that case to raise the question of the right of the court to inflict a new and larger punishment on the prisoner, without reference to the time of his imprisonment on the one set aside, that point was not presented so as to receive the attention of the court, and certainly was not considered or decided.

It would seem that there must, in the nature of the power

---

\* Archbold's Criminal Pleading, 176.          † 9 Wallace, 38.

thus exercised by the court, be in criminal cases some limit to it.

The judgment of the courts in this class of cases extends to life, liberty, and property. The terms of many of them extend through considerable periods of time, often many months, with adjournments and vacations in the same term, at the discretion of the judge. A criminal may be sentenced to a disgraceful punishment, as whipping, or, as in the old English law, to have his ears cut off, or to be branded in the hand or forehead.

The judgment of the court to this effect being rendered and carried into execution before the expiration of the term, can the judge vacate that sentence and substitute fine or imprisonment, and cause the latter sentence also to be executed? Or if the judgment of the court is that the convict be imprisoned for four months, and he enters immediately upon the period of punishment, can the court, after it has been fully completed, because it is still in session of the same term, vacate that judgment and render another, for three or six months' imprisonment, or for a fine? Not only the gross injustice of such a proceeding, but the inexpediency of placing such a power in the hands of any tribunal is manifest.

If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

The principle finds expression in more than one form in the maxims of the common law. In civil cases the doctrine is expressed by the maxim that no man shall be twice vexed for one and the same cause. *Nemo debet bis vexari pro una et*

*eadem causa.* It is upon the foundation of this maxim that the plea of a former judgment for the same matter, whether it be in favor of the defendant or against him, is a good bar to an action.

In the criminal law the same principle, more directly applicable to the case before us, is expressed in the Latin, " *Nemo bis punitur pro eodem delicto,*"* or, as Coke has it, " *Nemo debet bis puniri pro uno delicto.*"† No one can be twice punished for the same crime or misdemeanor, is the translation of the maxim by Sergeant Hawkins.

Blackstone in his Commentaries,‡ cites the same maxim as the reason why, if a person has been found guilty of manslaughter on an indictment, and has had benefit of clergy, *and suffered the judgment of the law,* he cannot afterwards be appealed.

Of course, if there had been no punishment the appeal would lie, and the party would be subject to the danger of another form of trial. But by reason of this universal principle, that no person shall be twice *punished* for the same offence, that ancient right of appeal was gone when the punishment had once been suffered. The protection against the action of the same court in inflicting punishment twice must surely be as necessary, and as clearly within the maxim, as protection from chances or danger of a second punishment on a second trial.

The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted.

Hence to every indictment or information charging a party with a known and defined crime or misdemeanor, whether at the common law or by statute, a plea of *autrefois acquit* or *autrefois convict* is a good defence.

---

* 2 Hawkins's Pleas of the Crown, 377.
† 4 Reports, 43, *a;* 11 Id. 95, *b.*
‡ Vol. 4, 315, Sharswood's edition.

In the case of *Crenshaw* v. *The State of Tennessee*,\* it was held by the Supreme Court of that State that the common-law principle went still further, namely, that an indictment, conviction, and punishment in a case of felony not capital was a bar to a prosecution for all other felonies not capital committed before such conviction, judgment, and execution.

If in civil cases, says Drake, J., in *State* v. *Cooper*,† the law abhors a multiplicity of suits, it is yet more watchful in criminal cases that the crown shall not oppress the subject, or the government the citizen, by unreasonable prosecutions.

These salutary principles of the common law have, to some extent, been embodied in the constitutions of the several States and of the United States. By Article VII of the amendments to the latter instrument it is declared that no fact once tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law; and by Article V, that no person shall for the same offence be twice put in jeopardy of life or limb . . . nor be deprived of life, liberty, or property without due process of law.

It is not necessary in this case to insist that other cases besides those involving life or limb are *positively* covered by the *language* of this amendment; or that when a party has had a fair trial before a competent court and jury, and has been convicted, that any excess of punishment deprives him of liberty or property without due course of law. On the other hand it would seem to be equally difficult to maintain, after what we have said of the inflexible rules of the common law against a person being twice punished for the same offence, that such second punishment as is pronounced in this case is not a violation of that provision of the Constitution.

It is very clearly the *spirit* of the instrument to prevent a second punishment under judicial proceedings for the same crime, so far as the common law gave that protection.

In the case of *The Commonwealth* v. *Olds*,‡ one of the

---

\* 1 Martin & Yerger, 122.          † 1 Green's New Jersey, 375.
‡ 5 Littell, 137.

best common law judges that ever sat on the bench of the Court of Appeals of Kentucky* remarked, "that every person acquainted with the history of governments must know that state trials have been employed as a formidable engine in the hands of a dominant administration. . . . To prevent this mischief the ancient common law, as well as Magna Charta itself, provided that one acquittal or conviction should satisfy the law; or, in other words, that the accused should always have the right secured to him of availing himself of the pleas of *autrefois acquit* and *autrefois convict.* To perpetuate this wise rule, so favorable and necessary to the liberty of the citizen in a government like ours, so frequently subject to changes in popular feeling and sentiment, was the design of introducing into our Constitution the clause in question."

In the case of *Cooper* v. *The State*,† in the Supreme Court of New Jersey, the prisoner had been indicted, tried, and convicted for arson. While still in custody under this proceeding he was arraigned on an indictment for the murder of two persons who were in the house when it was burned. To this he pleaded the former conviction in bar, and the Supreme Court held it a good plea. It is to be observed that the punishment for arson could not technically extend either to life or limb; but the Supreme Court founded its argument on the provision of the constitution of New Jersey, which embodies the precise language of the Federal Constitution. After referring to the common law maxim the court says: "The constitution of New Jersey declares this important principle in this form: 'Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.' Our courts of justice would have recognized and acted upon it as one of the most valuable principles of the common law without any constitutional provision. But the framers of our Constitution have thought it worthy of especial notice. And all who are conversant with courts of justice must be satisfied that this great principle

---

* Mills, J.—REP.        † 1 Green, 361.

forms one of the strong bulwarks of liberty. . . . Upon this principle are founded the pleas of *autrefois acquit* and *autrefois convict.*" ·

And Hawkins in his Pleas of the Crown* says that both the pleas of *autrefois acquit* and *autrefois convict* are grounded on the maxim that a man shall . . . not be brought into danger of his life for one and the same offence more than once.

In *Moor* v. *The People of Illinois,*† the defendant was fined four hundred dollars under the criminal code of that State for harboring and secreting a negro slave. The case came to this court under the twenty-fifth section of the Judiciary Act, on the ground that the right to legislate on that subject was exclusively in Congress. The court did not concur in that view of the question. But it was also urged that the party might be subjected twice to punishment for the same offence if liable to be prosecuted under statutes of both State and National legislatures. In regard to this Judge McLean said, in a dissenting opinion, that "the exercise of such a power by the States would, in effect, be a ·violation of the Constitution of the United States and of the respective States. They all provide against a second punishment ·for the same act." "It is contrary," said he, "to the nature and genius of our government to permit an individual to be twice punished for the same act."

Mr. Bishop, in the latest edition of his work on .criminal law,‡ speaking of this constitutional provision, says the construction of these words is that properly .the rule extends to treason and all felonies, not to misdemeanors. Yet practically and wisely the courts have applied it to misdemeanors, and that in view of the liberal construction of statutes and constitutions in favor of persons charged with crime he cannot well see how courts can refuse to apply this constitutional guarantee in cases of misdemeanor.

Chitty§ also drops the words life and limb in speaking of

---

* Pages 515, 526.          † 14 Howard, 13.
‡ Sections 990, 991, 5th edition.          § 1 Criminal Law, 452–462.

the pleas of *autrefois acquit* and *autrefois convict*, and declares that they both depend on the principle that no man shall more than once be placed in peril of legal penalties upon the same accusation.

If we reflect that at the time this maxim came into existence almost every offence was punished with death or other punishment touching the person, and that these pleas are now held valid in felonies, minor crimes, and misdemeanors alike, and on the difficulty of deciding when a statute under modern systems does or does not describe a felony when it defines and punishes an offence, we shall see ample reason for holding that the principle intended to be asserted by the constitutional provision must be applied to all cases where a second punishment is attempted to be inflicted for the same offence by a judicial sentence.

For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted?

The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it.

But there is a class of cases in which a second trial is had without violating this principle. As when the jury fail to

agree and no verdict has been rendered,* or the verdict set aside on motion of the accused, or on writ of error prosecuted by him,† or the indictment was found to describe no offence known to the law.

And so it is said that the judgment first rendered in the present case being erroneous must be treated as no judgment, and, therefore, presenting no bar to the rendition of a valid judgment. The argument is plausible but unsound. The power of the court over that judgment was just the same, whether it was void or valid. If the court, for instance, had rendered a judgment for two years' imprisonment, it could no doubt, on its own motion, have vacated that judgment during the term and rendered a judgment for one year's imprisonment; or, if no part of the sentence had been executed, it could have rendered a judgment for two hundred dollars fine after vacating the first. Nor are we prepared to say, if a case could be found where the first sentence was wholly and absolutely void, as where a judgment was rendered when no court was in session, and at a time when no term was held—so void that the officer who held the prisoner under it would be liable, or the prisoner at perfect liberty to assert his freedom by force—whether the payment of money or imprisonment under such an order would be a bar to another judgment on the same conviction. On this we have nothing to say, for we have no such case before us. The judgment first rendered, though erroneous, was not absolutely void. It was rendered by a court which had jurisdiction of the party and of the offence, on a valid verdict. The error of the court in imposing the two punishments mentioned in the statute, when it had only the alternative of one of them, did not make the judgment wholly void. *Miller* v. *Finkle*‡ is directly in point. But we think that no one will contend that the first sentence was so absolutely void that an action could be maintained

---

* United States *v.* Perez, 9 Wheaton, 579.
† People *v.* Casborus, 13 Johnson, 351.
‡ 1 Parker Criminal Reports, 374.

against the marshal for trespass in holding the prisoner under it.

The petitioner, then, having paid into court the fine imposed upon him of two hundred dollars, and that money having passed into the Treasury of the United States, and beyond the legal control of the court, or of any one else but the Congress of the United States, and be having also undergone five days of the one year's imprisonment, all under a valid judgment, can the court vacate that judgment entirely, and without reference to what has been done under it, impose another punishment on the prisoner on that same verdict? To do so is to punish him *twice* for the same offence. He is not only put in jeopardy twice, but put to actual punishment twice for the same thing.

The force of this proposition cannot be better illustrated than by what occurs in the present case if the second judgment is carried into effect. The law authorizes imprisonment not exceeding one year *or* a fine not exceeding two hundred dollars. The court, through inadvertence, imposed both punishments, when it could rightfully impose but one. After the fine was paid and passed into the treasury, and the petitioner had suffered five days of his one year's imprisonment, the court changed its judgment by sentencing him to one year's imprisonment from that time. If this latter sentence is enforced it follows that the prisoner in the end pays his two hundred dollars fine and is imprisoned one year and five days, being all that the first judgment imposed on him, and five days' imprisonment in addition. And this is done because the first judgment was confessedly in excess of the authority of the court.

But it has been said that, conceding all this, the judgment under which the prisoner is now held is erroneous, but not void; and as this court cannot review that judgment for error, it can discharge the prisoner only when it is void.

But we do not concede the major premise in this argument. A judgment may be erroneous and not void, and it may be erroneous *because* it is void. The distinctions between void and merely voidable judgments are very nice,

and they may fall under the one class or the other as they are regarded for different purposes.

We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone. That the principle we have discussed then interposed its shield, and forbid that he should be punished again for that offence. The record of the court's proceedings, at the moment the second sentence was rendered, showed that in that very case, and for that very offence, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offence was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist.

It is no answer to this to say that the court had jurisdiction of the person of the prisoner, and of the offence under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case. If a justice of the peace, having jurisdiction to fine for a misdemeanor, and with the party charged properly before him, should render a judgment that he be hung, it would simply be void. Why void? Because he had no power to render such a judgment. So, if a court of general jurisdiction should, on an indictment for libel, render a judgment of death, or confiscation of property, it would, for the same reason, be void. Or if on an indictment for treason the court should render a judgment of attaint, whereby the heirs of the criminal could not inherit his property, which should by the judgment of the

court be confiscated to the State, it would be void as to the attainder, because in excess of the authority of the court, and forbidden by the Constitution.

A case directly in point is that of *Bigelow* v. *Forrest*.* In that case, under the confiscation acts of Congress, certain lands of French Forrest had been condemned and sold, and Bigelow became the holder of the title conveyed by those proceedings. After Forrest's death his son and heir brought suit to recover the lands, and contended that under the joint resolution of Congress, which declared that condemnation under that act should not be held to work a forfeiture of the real estate of the offender beyond his natural life, the title of Bigelow terminated with the death of the elder Forrest.

In opposition to this it was argued that the decree of the court confiscating the property in terms ordered *all* the estate of the said Forrest to be sold, *and that though this part of the decree might be erroneous, it was not void.* Here was a case of a proceeding *in rem* where the property was within the power of the court, and its authority to confiscate and sell under the statute beyond question; but the extent of that power was limited by the statute. The analogy to the case before us seems almost perfect. In that case the court said: "It is argued, however, on behalf of the plaintiff in error that the decree of confiscation of the District Court of the United States is conclusive, that the entire right, title, and interest of French Forrest was condemned and ordered to be sold; and that as his interest was a fee simple that entire fee was confiscated and sold. Doubtless, a decree of a court having jurisdiction to make the decree cannot be impeached collaterally, *but under the act of Congress the District Court had no power to order a sale which should confer upon the purchaser rights outlasting the life of French Forrest. Had it done so it would have transcended its jurisdiction.*" The doctrine of that case is reaffirmed in the case of *Day* v. *Micou* at the present term,† where it is said that in *Bigelow* v. *Forrest* " we also determined that nothing more was within the ju-

---

* 9 Wallace, 339.          † *Supra,* 156.

risdiction or judicial power of the District Court (than the life estate), and that consequently a decree condemning the fee could have no greater effect than to subject the life estate to sale."

But why could it not? Not because it wanted jurisdiction of the property or of the offence, or to render a judgment of confiscation, but because in the very act of rendering a judgment of confiscation it condemned more than it had authority to condemn. In other words, in a case where it had full jurisdiction to render one kind of judgment, operative upon the same property, it rendered one which included that which it had a right to render, and something more, and this excess was held simply void. The case before us is stronger than that, for unless our reasoning has been entirely at fault, the court in the present case could render no second judgment against the prisoner. Its authority was ended. All further exercise of it in that direction was forbidden by the common law, by the Constitution, and by the dearest principles of personal rights, which both of them are supposed to maintain.

There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman; and in such cases no narrow or illiberal construction should be given to the words of the fundamental law in which they are embodied. Without straining either the Constitution of the United States, or the well-settled principles of the common law, we have come to the conclusion that the sentence of the Circuit Court under which the petitioner is held a prisoner was pronounced without authority, and he should therefore be discharged.

DISCHARGED ACCORDINGLY.

Mr. Justice CLIFFORD, dissenting:

Provision is made by the act of the eighth of June, 1872, that any person who shall steal, purloin, or embezzle any mail-bag or other property in the use of or belonging to the

Post-office Department, or who shall, for any lucre, gain, or convenience, appropriate any such property to his own use, or to any other than its proper use, or who shall, for any lucre or gain, convey away any such property to the hindrance or detriment of the public service, his aiders, abettors, and counsellors, shall, if the value of the property be twenty-five dollars or more, be deemed guilty of felony, and on conviction thereof the offender shall be imprisoned not exceeding three years; and if the value of the property be less than twenty-five dollars, the party offending shall be imprisoned not more than one year or be fined not less than ten nor more than two hundred dollars.*

Pursuant to that act of Congress the petitioner was indicted in the Circuit Court of the United States for the Southern District of New York, held by adjournment on the seventh of October, 1873; and it appears that the indictment contained twelve counts, in each of which he is charged either with unlawfully, knowingly, wilfully, and feloniously stealing, purloining, or embezzling fifty mail-bags belonging to the Post-office Department, each of the value of fifty cents, or with unlawfully, knowingly, wilfully, and feloniously appropriating the same to his own use or to some other than its proper use, or with unlawfully, knowingly, wilfully, and feloniously conveying away the same to the hindrance and detriment of the public service.

Doubt cannot be entertained that each of the twelve counts of the indictment is well drawn, and that they embody an offence which is legally defined in the aforesaid act of Congress. By the record it also appears that a jury was duly impanelled on the fifteenth of October in the same year, for the trial of the defendant upon that indictment, and that the jury, on the twenty-second of the same month, returned their verdict that the defendant is guilty, and that the value of the said mail-bags is less than twenty-five dollars.

Convicted as the defendant was upon a valid indictment, he was liable to be punished by being imprisoned not more

---

* 17 Stat. at Large, 320.

than one year or to be fined not less than ten nor more than two hundred dollars, but the judge presiding at the trial, without authority of law, on the third day of November in the same year sentenced the defendant " to be imprisoned for the term of one year and that he pay a fine of two hundred dollars," and it appears that he was remanded to prison in execution of the sentence. Plenary proof is also exhibited that the defendant, on the following day, paid the fine in full to the clerk and the clerk certifies under that date that " said sum is now on deposit in the registry of the court."

Two days after the sentence was pronounced, to wit, on the fifth of the same November, application in behalf of the defendant was made to the district judge of that district for a habeas corpus, and it appears that the writ was immediately granted and made returnable to the Circuit Court on the eighth of the same November. Due return was made of the same by the marshal, and the return shows that he produced the defendant and a certified copy of the sentence, stating that the sentence was the cause of the imprisonment and detention of the petitioner. Regular proceeding, therefore, was instituted for a review of the sentence before the money paid for the fine passed out of the registry of the court, as it appears that the amount of the fine was not deposited to the credit of the Treasurer of the United States until the day before the return day of the writ of habeas corpus. On the following day the Circuit Court came in by adjournment, within the same term as that when the indictment was tried, and the same judge presiding who sat in the trial and who passed the sentence which is the subject of complaint. Attention was called to the return of the marshal to the writ of habeas corpus, and the parties having been heard the following proceedings took place:

By the court.—Ordered that the sentence pronounced against the defendant on the third of the present month be, and the same is hereby, vacated and set aside, and the record states that " the court thereupon proceeds to pass judgment anew and resentence the prisoner, Edward Lange, to be imprisoned for the term of one year."

Application was subsequently made to the circuit judge, on the seventeenth of December in the same year, for a writ of habeas corpus and a writ of certiorari, to the end that the prisoner might be discharged from custody, and it appears that the circuit judge granted a rule requiring the district attorney and the marshal to show cause before the Circuit Court, on the twenty-fourth of the same month, at 11 o'clock in the forenoon, why the two writs mentioned should not issue. Service was made and the parties appeared and were heard before the circuit judge and the district judge for that district and the judge who sat on the trial of the indictment and who passed the two sentences.

Counsel on both sides were heard, and the court denied the application upon the ground that the judgment, being for a punishment expressly authorized by an act of Congress, cannot be impeached by a writ of habeas corpus, unless it appears that the court had no jurisdiction to pronounce the sentence. They proceed to answer that inquiry, commencing with the remark that the jurisdiction is questioned only upon the ground that the court had, on a previous day in the same term, pronounced judgment imposing a different sentence, and they might have added that the sentence first pronounced imposed a punishment not authorized by the act of Congress under which the indictment was found.

Vacated as the former judgment was by the order of the court, they proceed to consider the case, in that aspect, and remark that if the court had power to vacate that judgment it became of no effect, and that it was the duty of the court to deal with the prisoner upon his conviction of the offence charged in the indictment, and for the reasons given, as more fully set forth in the record, they discharged the rule and denied the application.

Subsequently, to wit, on the twenty-ninth of the same December, the Circuit Court again came in by adjournment, the judge presiding who sat on the trial of the indictment and who passed the respective sentences against the defendant, and it being suggested that the rights of the prisoner would be better preserved if the writ of habeas corpus was

granted as prayed in the preceding application, it was ordered that the writ issue returnable on the same day, and the return having been made, the counsel were again heard, but it being conceded that the second sentence was pronounced in the same term as the first sentence, it was ordered that the writ of habeas corpus be dismissed and that the prisoner be remanded for the reasons given by the court on the last preceding occasion.    Whereupon the petitioner, by his counsel, applied to this court for a writ of habeas corpus directed to the marshal having the prisoner in custody, commanding him to produce the prisoner at such time as the court shall direct, and that the marshal then and there show the cause of the prisoner's detention, to the end that he may be discharged from custody; and the petitioner also prayed that a writ of certiorari might issue to the clerk of the Circuit Court for that district, commanding him to certify to this court all the record of that court respecting the case of the prisoner, to the end that errors therein may be corrected.

Both writs were ordered, but with the understanding that the writ of habeas corpus would not be issued and served until the counsel were further heard upon the return of the writ of certiorari, and upon the return of the writ of certiorari the counsel were fully heard, and the majority of the court decided that the prisoner was entitled to be discharged from his imprisonment.    Unable to concur in that conclusion, I will proceed to state the reasons of my dissent.

By the fourteenth section of the Judiciary Act it is provided, among other things, that either of the justices of the Supreme Court as well as the judges of the District Courts shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of commitment, provided that writs of habeas corpus shall in no case extend to persons in jail unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify.    Properly construed the principal provision empowers the Supreme Court as well as the

justices thereof to issue the writ and to grant the relief as prayed to the petitioner.*

Authority upon the subject is also conferred by other acts of Congress, but it is unnecessary to refer to any other act, as the petition in this case is obviously founded upon the provision in the Judiciary Act.

Courts of justice may refuse to grant the writ of habeas corpus where no probable ground for relief is shown in the petition, or where it appears that the petitioner is duly committed for felony or treason plainly expressed in the warrant of commitment, but where probable ground is shown that the party is in custody under or by color of authority of the United States, and is imprisoned without just cause, and, therefore, has a right to be delivered, the writ of habeas corpus then becomes a writ of right which may not be denied, as it ought to be granted to every man who is unlawfully committed or detained in prison or otherwise restrained of his liberty. Authorities in support of these propositions are unnecessary, as wherever the principles of the common law have been adopted or recognized they are universally acknowledged.

Civil society, however, could not exist if it were permitted that crimes should go unpunished, nor is it true that the writ of habeas corpus was ever intended to operate as the means of delivering a prisoner from his imprisonment if he had been duly indicted, convicted, and sentenced, and is in prison by virtue of a lawful conviction under a valid indictment and a legal sentence passed in pursuance of a constitutional law of the jurisdiction where the offence was committed. No objection is made in this case to the validity of the indictment, nor is it questioned that the defendant was duly convicted of the offence set forth in the several counts of the indictment. Beyond all question, therefore, it follows that he was liable to be " imprisoned not more than one year, or to be fined not less than ten nor more than two hundred dollars."

* 1 Stat. at Large, 82.

None of these propositions can be successfully controverted, as it is impliedly conceded that the act of Congress is a valid law, and it is not even suggested that the indictment is defective or that there was any error in the trial or in the verdict of the jury. Concede these several propositions, and it follows beyond peradventure that the defendant might have been sentenced to imprisonment for the term of one year or he might have been sentenced to pay a fine of two hundred dollars, but the court sentenced him to both, that is, that he should be imprisoned for the term of one year, and that he should pay a fine of two hundred dollars, which is a sentence not authorized by the act of Congress which defines the offence and under which the indictment was found.

It is insisted by the petitioner that the sentence pronounced in such a case is an entirety, and that if it exceeds the punishment provided by law it is wholly illegal, and in that proposition I entirely concur. He cites cases* which fully support the proposition. Most of these cases were decided in appellate tribunals and in jurisdictions where there was no legislative act conferring any authority to impose the proper sentence or to remand the prisoner to the court of original jurisdiction for that purpose, and of course the only judgment which the appellate court could render was that of reversal, which operated to discharge the prisoner. Legislative defects of the kind, in many jurisdictions, have been corrected, and wherever that has been done the proper sentence is either imposed by the appellate court or the case is remanded to the court of original jurisdiction for that purpose.†

Congress has never empowered this court to exercise any

---

* Rex v. Ellis, 5 Barnewall & Creswell, 395; King v. Bourne, 7 Adolphus & Ellis, 58; Queen v. Silversides, 3 Q. B. 406; King v. The Queen, 7 Id. 795; Holt v. Regina, 2 Dowling & Lowndes, 774; Ex parte Page, 49 Missouri, 291; Holland v. Queen, 2 Jebb & Symes, 357; O'Leary v. People, 4 Parker's Criminal Reports, 187; Shepherd v. Commonwealth, 2 Metcalf, 419; Stevens v. Same Defendant, 4 Id. 360; Fitzgerald v. State, 4 Wisconsin, 395; Fellinger v. People, 15 Abbott's Practice Reports, 128; Ratzky v. People, 29 New York, 124.

† Ratzky v. People, 29 New York, 124.

appellate power over the judgments of the Circuit Courts in criminal cases, except where the Circuit Court is held by two judges and they differ in opinion and certify the question in difference here for the decision of this court.  Except in that limited class of cases this court cannot re-examine any ruling or decision of the Circuit Court in any criminal case, nor will a writ of error lie from this court to the Circuit Court in such case.  Exceptions, under the statute of Westminster, were never allowed in criminal cases in the parent country, and from the moment that statute was adopted as the rule of decision in the Federal courts to the present time, its application, without any exception, has uniformly been confined to civil actions.*

Authority to re-examine the rulings and decisions of the Circuit Courts in criminal cases might undoubtedly be vested in the Supreme Court, but the insuperable difficulties in the way of exercising any such power at the present time is that Congress has not conferred any such jurisdiction.  Congress, it is true, has not declared in express terms that the appellate jurisdiction of the Supreme Court shall not extend to criminal cases, nor to civil actions or suits in equity where the matter in dispute, exclusive of costs, does not exceed the sum or value of two thousand dollars, but Congress has described affirmatively the appellate jurisdiction of the Supreme Court, and that affirmative description has always been held "to imply a negative on the exercise of such appellate power as is not comprehended within it."†

Governed by those principles this court has decided in repeated instances that a writ of error will not lie, under any circumstances, to a Circuit Court in a criminal case.‡

---

* 1 Chitty Criminal Law, 622; 1 Levinz, 68; 1 Siderfin, 65; Rex v. Stratton, 21 Howell's State Trials, 1187; United States v. Gibert et al., 2 Sumner, 22; People v. Holbrook, 13 Johnson, 90; Ex parte Barker, 7 Cowen, 143; People v. Vermilyea, Ib. 108; 2 Phillips on Evidence, 997.

† United States v. More, 3 Cranch, 170; Durousseau v. United States, 6 Id. 314.

‡ Ex parte Kearney, 7 Wheaton, 42; Ex parte Watkins, 3 Peters, 201; Forsyth v. United States, 9 Howard, 571; In re Kaine, 14 Id. 120; Ex parte Watkins, 7 Peters, 568; Ex parte Gordon, 1 Black, 505.

Even if a writ of error would lie in such a case still the concession would not advance the argument in favor of the petitioner, as no such writ has been sued out or served, nor is the record here under any process which authorizes this court to reverse or affirm the judgment of the Circuit Court, as the writ of habeas corpus is not addressed in any sense to the judgment with any view to correct anything which it contains, nor is the judgment removed here for any other purpose than as evidence to support the representation set forth in the petition, that the petitioner is unlawfully imprisoned or restrained of his liberty. Hence it follows, that inasmuch as the record shows that the indictment is in due form, and that the conviction is valid, and that the judgment is legal in form and such as the act of Congress authorized the Circuit Court to impose, the only proper order which this court could give in the case was to remand the prisoner, as nothing more than that can be done in the case without exercising appellate power such as the court might exercise if Congress had authorized the court to grant a writ of error to re-examine the judgment as in a civil action.

Grant that a writ of error would lie, still it is manifest that the alleged error could not be corrected without a bill of exceptions, as the error is not apparent in the record. On the contrary, the sentence under which the petitioner is imprisoned is as perfect as one can be framed, as it follows the conviction, and no one pretends either that the conviction is invalid or that the indictment is in any respect erroneous. Unless, therefore, the writ of habeas corpus can properly perform the office both of a bill of exceptions and a writ of error the decision of this court must be erroneous; and if it be true that the writ of habeas corpus may perform both of those offices, then it follows that this court has been in error throughout its whole history, as it has always been competent for the court to re-examine the judgments of the Circuit Court in criminal cases, which, as it seems to me, it is impossible to admit.

Legislation to provide for a bill of exceptions in criminal cases or to authorize a writ of error is certainly unnecessary

if a petition for habeas corpus, well filled with the affidavits of the jurors who tried the case and of the counsel who conducted the defence, will answer the purpose, as it will be easy to strengthen such proofs, if need be, by the opinions of chamber counsel and by the affidavits of sympathizing bystanders and of the short-hand writers employed for the occasion. Plenty of material of that kind can readily be obtained, and if that will answer the purpose of a bill of exceptions to correct the rulings of a Federal judge, made in the trial of a criminal case, it is quite evident that no further legislation upon the subject is necessary.

Opposed to this it may be suggested that the writ of habeas corpus in this case is accompanied by the writ of certiorari, which must be admitted, and it must also be admitted that the office of the writ of certiorari is to bring up the record from the subordinate court for the inspection of this court, in order that the court, by virtue of the writ of habeas corpus, may inquire into the cause of commitment; but if it appear that the cause of commitment is the judgment of a court of competent jurisdiction in a case, not revisable by this court, the settled law is that the judgment is of itself a sufficient cause for the commitment, as neither the writ of habeas corpus nor the writ of certiorari will perform the office of a bill of exceptions. Hence the appellate court, unless specially authorized by legislative authority to do more, cannot look beyond the judgment, nor can it re-examine the proceedings which led to it, for the reason, as Marshall, C. J., says, that a judgment in its nature concludes the subject on which it is rendered and pronounces the law of the case, and he adds that the judgment of a court of record whose jurisdiction is final is as conclusive on all the world as the judgment of this court would be. It puts an end to inquiry concerning the fact by deciding it.*

It is to be understood, said Judge Story, that this court has no appellate jurisdiction confided to it in criminal cases by the laws of the United States. It cannot entertain a writ

---

* Ex parte Watkins, 3 Peters, 202; Ex parte Kearney, 7 Wheaton, 43.

of error to revise the judgment of the Circuit Court in any case where a party has been convicted of a public offence. If then, says the same learned judge, this court cannot *directly* revise a judgment of the Circuit Court in a criminal case, what reason is there to suppose that Congress intended to invest it with the authority to do it indirectly?*

Apply those rules to the case before the court and it is clear that the petitioner should be remanded, as it appears by the return that he is in prison by virtue of a sentence of the Circuit Court in regular form, which was pronounced by the court in pursuance of a legal conviction founded upon a valid indictment.

By virtue of the conviction the defendant became liable to be punished by imprisonment for a term of not more than one year or to be fined not less than ten nor more than two hundred dollars, and the court sentenced him to imprisonment for the term of one year.

Much stress, however, is placed upon the alleged fact that the first sentence imposed was of a different character, that it included imprisonment for the term of one year and a fine of two hundred dollars, but it is a sufficient answer to that suggestion to say that neither the ruling of the court in imposing that sentence nor the subsequent ruling of the court in vacating it and setting it aside is in any proper sense any part of the record. Statements to that effect are found in the minutes, but those are no part of the record nor can they be made so in any other mode than by a bill of exceptions, which is a proceeding wholly unknown except in civil actions. Nothing is properly included in the record of a criminal case except the indictment, the arraignment and the plea of the defendant, the impanelling of the jury, the conviction of the defendant and the sentence pronounced by the court, and the warrant for his removal in case the punishment is imprisonment. Affidavits cannot add anything to the record, and it is as clear as anything can be that neither

---

* Ex parte Kearney, 7 Wheaton, 42; Johnson *v.* United States, 3 McLean, 89.

the writ of habeas corpus nor the writ of certiorari can bring into review anything, not apparent on the face of the record.

Certain defects in the proceedings are alleged in this case, none of which are apparent on the face of the record. Reference will only be made to two of the alleged defects, as they are the only ones much pressed in argument. They are as follows: (1.) That a different sentence was first pronounced by the court, to wit, that the defendant should be imprisoned for the term of one year and that he should pay a fine of two hundred dollars. (2.) That he was remanded to prison in pursuance of that sentence.

Enough has already been remarked to show that the first sentence was wholly illegal, as the court, under the act of Congress defining the offence, could not lawfully pronounce such a sentence, and that the court, as soon as the error was discovered, directed that the defendant should be brought into court and vacated the sentence and set it aside, which, as all must agree, had the effect to render it a complete nullity, even if it ever had any force or effect, which is not admitted. Strong doubts are entertained whether any of these matters are the proper subjects of consideration, but it must be admitted, I think, that the affidavits, if they are admissible at all, are the proper subjects of reference to show what really did take place.

Certainly a sentence, vacated and set aside by the court which pronounced it, within the same term, for reason that it was plainly erroneous, to the prejudice of the prisoner, must, from the moment it was vacated and set aside, be regarded as a nullity. Such being the necessary legal conclusion, the state of the case before the court was just the same as it would have been if no sentence had ever been passed, as the record showed that the defendant was legally convicted of an offence against the authority of the United States, upon a valid indictment, and that the sentence which the law imposed upon such an offender had never been pronounced in the case. No motion for new trial was pending, and as all the other proceedings in the case were ended, it

was the plain duty of the court to pronounce the sentence which the law imposed in the case.

Two principal objections are taken to the right of the court under those circumstances to impose the sentence, though it is admitted that the sentence pronounced is one which the act of Congress under which the indictment is framed authorized the court to impose in the case. Those objections are as follows: (1.) That the defendant, after having been remanded under the first sentence, remained in prison five days before the court passed the order vacating the sentence and setting it aside. (2.) That the defendant, on the fourth of November, the day after the first sentence was passed, paid the amount of the fine imposed to the clerk of the Circuit Court, and that the clerk, on the seventh of the same month, the day before the existing sentence was imposed, deposited the amount of the fine to the credit of the Treasurer of the United States.

All must agree that neither of the defects suggested, if such they be, is apparent in the record, as the former sentence was before that vacated and set aside, and the evidence of the payment of the fine consists of the unsworn certificate of the clerk. Great difficulty exists in regarding a sentence in a criminal case, which has been vacated and set aside, as a part of the record, and it seems past belief that any one should for a moment contend that the certificate of the clerk that he had received the amount of fine from a prisoner in execution should be regarded as any part of the record in the present case.

Aside from those difficulties, however, there are several other questions involved which are of very great importance in the administration of criminal justice, which will be separately considered.

Confessedly all of the facts are without dispute, as it is conceded that the conviction of the defendant, the first sentence, the granting of the first writ of habeas corpus, the order vacating the first sentence and setting it aside, and the sentence as it now appears in the record, all took place during the same term of the Circuit Court; and it also ap-

pears that the sentence under which the defendant is detained in prison was pronounced by the same judge who presided at the trial of the prisoner and who imposed the sentence which was vacated and set aside.

Four principal propositions are maintained by the United States: (1.) That a sentence passed upon a prisoner duly convicted of an offence defined by an act of Congress, if erroneous, may be vacated and set aside like any other judgment during the term in which it was pronounced, by the court which awarded it, and that the prisoner may be sentenced in the same term, as provided by law, for the offence of which he stands convicted. (2.) That an erroneous sentence, when vacated and set aside during the same term by the judge who pronounced it, becomes void and of no effect, and that the prisoner, if duly convicted under a valid indictment, may be sentenced to such punishment as the law provides for the offence of which he is convicted just as if the erroneous sentence had never been pronounced. (3.) That the power of the court to sentence a prisoner legally convicted is not superseded or withdrawn by the fact that the first sentence pronounced in such a case was erroneous, if the erroneous sentence, within the same term, is promptly vacated and set aside as soon as the error is discovered. (4.) Nor can it be held that the power of the court in that behalf is affected by the fact that the prisoner in the meantime, as in this case, paid the fine which was imposed by the court as a part of the sentence, provided the error is discovered within the same term and it appears that the judge who imposed the erroneous sentence immediately vacated the sentence and set it aside.

1. Exactly the same question in principle was presented in the case of *King* v. *Price*,\* to the King's Bench, where it was decided very early in the present century. Suffice it to say that the charge was perjury, and that the court, after overruling a motion for a new trial, sentenced the prisoner to be imprisoned in Newgate for one calendar month, and

---

\* 6 East, 327.

that he then be transported beyond the seas for seven years. Subsequent researches, however, satisfied the court that the sentence was erroneous because not warranted by law, and the case shows that the court, a few days before the close of the term, vacated it and set it aside, and on the last day of the term the prisoner was again brought into court and set at the bar, as Lord Ellenborough stated, for the purpose of passing upon him a different judgment, which, as he observed, might be done at any time within the same term; and it also appears that Mr. Justice Grose, after having stated to the prisoner that the former sentence had been vacated, pronounced the sentence of the court in the case, that the prisoner should forfeit £20 and be imprisoned in Newgate for the term of six months without bail, that his oath from thenceforth should not be received in any court of record within the realm, and that after the expiration of his imprisonment he should be transported beyond the seas for the term of six years. Seventy years have elapsed since that decision was made, and yet it has never been called in question by the court where it was made. Based on that decision this court said, in the case of *Basset* v. *United States*,* that the control of the court over its own judgments during the term is of every day's practice, which is a proposition supported by the highest authority.†

Courts of common law possessed the power to vacate their judgments during the term in which they were rendered, and the rule is still the same in all courts exercising jurisdiction in common-law cases, whether civil or criminal; and the remark is equally correct whether applied to a State or Federal court. Power of a court over its judgments during the entire term in which they are rendered is unlimited.‡ Every term continues until the call of the next succeeding term, unless previously adjourned *sine die;* and until that time the judgment may be modified or stricken out.§   Dur-

---

* 9 Wallace, 41.            † Doss *v.* Tyack, 14 Howard, 312.

‡ Freeman on Judgments, § 90.

§ Noonan *v.* Bradley, 12 Wallace, 129; King *v.* Justices, 1 Maule & Selwyn, 442.

ing the same session or assize or any adjournment thereof, says Mr. Archbold, the court may vacate the judgment passed upon the defendant, before it has become matter of record, and pass another less of even more severe.*

Unqualified support to the proposition that an erroneous sentence may be corrected or altered at any time during the term is also found in the case of *Rex* v. *Fletcher*, decided in 1803 by the twelve judges.†

Amendments may be made while the proceedings are in paper, that is, until judgment is issued, for until the end of the term the proceedings, except, perhaps, in capital cases, are considered only *in fieri*, and consequently they are subject to the control of the court.‡ Equally decisive also is the language of Mr. Starkie in his valuable work on criminal pleading, in which he lays down the rule that, during the term, assizes, or session in which judgment is given it remains in the breast of the court, and he states that the fine imposed or any other discretionary punishment may be varied, but he adds that after the term it becomes matter of record and admits of no alteration.§

It is clear, says Mr. Chitty, in the case of misdemeanors, that the court may vacate the judgment passed before it becomes matter of record, and may mitigate or pass another, even when the latter is more severe.‖

If, by inadvertence in passing a sentence, says Colby, a requirement of the statute has been overlooked, the court may correct the judgment at the same term before the sheriff has proceeded to execute it, and he adds that such correc-

---

* Archbold's Pleading and Evidence, by Welsby, 15th ed. 177; Comyn's Digest, Title Indictment, N.

† Russell & Ryan Crown Cases, 60.

‡ 3 Blackstone's Commentary, 407; George *v.* Wisdom, 2 Burrow, 756; King *v.* Knolles, 1 Salkeld, 47; Turner *v.* Barnaby, 2 Id. 566; Greenwood *v.* Piggott, 3 Id. 31; Co. Litt. 260, a; 1 Chitty's Archbold Practice, 11th ed. 541.

§ Citing 1 Institutes, 260; Cro. Car. 251; 2 Hawkins's Pleas of the Crown, 48, § 25; 1 Starkie's Criminal Pleading, 262; Blackamore's Case, 8 Reports, 460.

‖ 1 Chitty's Criminal Law, 722.

tion may be made by expunging or vacating the first sentence and passing a new one.*

Coke states the rule at common law to be that the record of any judicial act done remaineth during the term in the breast of the judges of the court and in their remembrance, hence, as he says, the roll is alterable during that term as the judges shall direct, but when that term is past then the record, as he states the rule, is in the roll and admitteth of no alteration, averment, or proof to the contrary.

Judgments in criminal cases, it is admitted by Gabbett,† may be vacated before they become matter of record, but he insists that no court can make any alteration in the same when once the judgment is solemnly entered on the record, except that it may be reversed by writ of error if any material defect appear on the face of it.

What is meant by the final record is nowhere better explained than by the Supreme Court of Massachusetts in the case of *Commonwealth* v. *Weymouth*,‡ in which the opinion was given by the chief justice. Minutes of the proceedings in a criminal trial are made on the docket by the clerk as they take place, but the record, except in capital cases, is not made until the end of the term or session of the court, when the whole proceedings are spread upon the record in a book or books kept for that purpose, which is, in the Federal courts, the proper substitute for what is called the roll in the practice of the parent country. Such a record is never made up in ordinary criminal trials during the term, but the legal evidence of the proceedings rests in the minutes of the clerk, which, if need be, may be verified by his oath. Hence it is that even the strictest authorities admit that erroneous sentences may be corrected during the term in which it was imposed, as that could always be done in the parent country, although a writ of error would lie to correct the error if it was apparent on the face of the record.

---

\* Criminal Law, vol. 1, p. 391; Miller *v.* Finkle, 1 Parker's Criminal Reports, 376.

† 2 Criminal Law, 564; Rex *v.* Walcott, 4 Modern, 396.

‡ 2 Allen, 144.

Accordingly it was held there that if the error was not corrected during the term it could only be corrected by the appellate court, and inasmuch as the appellate court could only reverse or affirm the judgment of the court of original jurisdiction, it followed, in case the judgment was reversed, that the prisoner was discharged.

State legislatures also, in some instances, have created appellate courts in criminal cases without investing such courts with the power either to impose the sentence which the subordinate court should have imposed or to remand the prisoner to the subordinate court for that purpose, and cases are referred to which show that the prisoner in such jurisdictions was necessarily discharged, but all such difficulties in most jurisdictions where they existed for a time have been obviated by more discreet legislation.*

Unsupplied as the jurisprudence of the United States is with any appellate tribunal for the correction of errors in criminal cases, it seems necessary to preserve all the corrective power legally vested in the courts of original jurisdiction to that end. Errors and mistakes will occur, but it is settled law that a writ of error will not lie from this court to a Circuit Court, and it is equally well settled that a writ of error will not lie in the circuit for any such purpose.†
Resort to that remedy has certainly been had in a few instances in the Circuit Court in civil cases, but all the authorities agree that if the error be in the judgment itself and not in the process, a writ of error does not lie in the same court.‡
Errors of fact in the process sued out in a civil action, or such as happened through the fault of the clerk in the record of the proceedings prior to the judgment, might be corrected at common law by a writ of error returnable in the court where the action was commenced and where the judg-

---

* Ratzky v. People, 29 New York, 124; McKee v. People, 32 Id. 239; Campbell v. Regina, 11 Queen's Bench, 810; Jacquins v. Commonwealth, 9 Cushing, 279.

† Pickett's Heirs v. Legerwood, 7 Peters, 147.

‡ Kemp v. Cook, 18 Maryland, 137; Hawkins v. Bowie, 9 Gill & Johnson, 437.

Opinion of Clifford, J., dissenting.

ment was rendered. When granted to re-examine a judgment rendered in the King's Bench it was called a writ of error *coram nobis*, because it was founded upon a record and process described in the writ as remaining "before us," in accordance with the theory that the sovereign of the kingdom presided in the court.* Such a writ might also be sued out in the common pleas for a like purpose, but the writ, when sued out and returnable in the latter court, was denominated a writ of error *coram vobis*, because the writ was directed to "you and your associates," meaning the chief justice and the other justices of that court.† Proceedings under such a writ of error, in respect to a civil action, never extended to the judgment, as the rule was universal that a writ of error for that purpose must issue from another and a superior tribunal.‡ Such a writ, when returnable in the King's Bench, might extend to a criminal case as well as to a civil case, and might, within the scope of its operations, embrace questions of law as well as questions of fact, but it never extended to the correction of any error in the judgment, because the writ of error for that purpose must be issued from the proper appellate tribunal.§

Sufficient has already been remarked to show that such an error in the judgment in a criminal case cannot be corrected at all unless the correction can be made in the mode adopted by the Circuit Court in this case, as it is clear that a writ of error will not lie from this court to a Circuit Court in a criminal case for any purpose, nor will a writ of error *coram vobis* lie in a Circuit Court to correct any error of law or fact in a Circuit Court.‖

2. Such an error, it is said, cannot be corrected in that

---

* 2 Tidd's Practice, 1136; 2 Williams's Saunders, 101, note 1; Dewitt *v.* Post, 11 Johnson, 460; 3 Blackstone's Commentaries, by Cooley, 407, note 4.

† 1 Archbold's Practice, 6th ed. 504.

‡ Pickett *v.* Legerwood, 7 Peters, 148; 1 Rolle's Abridgment, 746; 2 Sellon's Practice, 484; 3 Blackstone's Commentaries, 407, note 5.

§ The Queen *v.* O'Connell, 7 Law Rep. (Irish), 356, 357; 9 Viner's Abridgment, 491.

‖ United States *v.* Plumer, 3 Clifford, 59.

mode in this case because the prisoner had been in confinement five days under the sentence before the order was made vacating the sentence and setting it aside, and the proposition is advanced in argument that no such correction can be made in any case after the prisoner is removed from the court in pursuance of the sentence, which is equivalent to the proposition that it cannot be made at all in that mode, as it will seldom or never happen that such a mistake will be discovered at the time it is made.

Cases may be imagined where the denial of such a remedy would shock the public sense; as if the Circuit Court, in a case where the prisoner was duly convicted of murder upon the high seas under the Crimes Act of the third of March, 1825, should, through inadvertence, sentence the prisoner not only that "he shall suffer death," but that the body of the offender "shall be delivered to a surgeon for dissection," as the sentence may be in a case where the indictment and conviction are under the original Crimes Act.*

Execution seldom or never immediately follows the sentence, but the sentence is that the prisoner be remanded to the place whence he came, and that he be there imprisoned until the day fixed for his execution, which shows that the term of imprisonment from the date of the sentence to the time of execution is an essential part of the sentence. Suppose in the case suggested the error is not discovered before the expiration of ten days, will any one contend that it cannot be corrected? If not, then it must be executed as it stands, or the prisoner must be set free, perhaps to repeat his offence.

3. Assume that the rule adopted by the majority of the court in this case is correct, and it follows beyond peradventure that the court could not vacate the sentence and pass the sentence authorized by law, and if not, then it is clear that it could not be corrected in any other mode, as it is settled law that a writ of error will not lie for the purpose either from this court or in the court where the error was

---

* 1 Stat. at Large, 113; 4 Id. 115.

committed.   Public justice must, therefore, be defeated, as all will agree, if the error cannot be corrected that the prisoner would be entitled to a discharge on habeas corpus, as every sentence in a criminal case is an entirety, so that if any part of it is unauthorized by law the whole sentence is illegal.   Any rule which will peremptorily discharge a prisoner, legally convicted of an offence, whether it be a felony or misdemeanor, merely because the court committed an error in pronouncing the sentence, cannot be a sound one, nor is it believed that it will be satisfactory to any who have much acquaintance with the administration of criminal justice in the Federal courts.

Many cases are cited by the petitioner, but an examination of them will show that not one of the number supports any such proposition as that which it is necessary to adopt to sustain the ruling of this court in ordering the discharge of the prisoner, nor can any case be found where such a doctrine is directly laid down.

Where the sentence imposed is legal in all respects, it is held in Maine that the judge, after the prisoner has been remanded in execution of the sentence, cannot order him to be brought up and set at the bar for the purpose of revising the sentence and increasing the punishment.   In that case the prisoner had been duly sentenced to six months' imprisonment in the county jail, and he had served out nineteen days of the time, when the court ordered that he should again be brought up, and the court imposed a new sentence of imprisonment for the term of three years in the State's prison; but it is apparent that, the first sentence being regular and according to law, there was no error to correct, which shows that the case is as widely different from the one before the court as truth is from error.*

Doubts may well arise whether the decision in that case is correct, but it is not necessary to call it in question in this case, as the first judgment in this case, as conceded by the petitioner, was wholly illegal, and in such a case the author-

---

* Brown v. Rice, 57 Maine, 56.

ities appear to be uniform that the sentence authorized by law may be imposed at any time within the same term, and in some of the cases it is held that it may even be done in a subsequent term.* Promptitude in criminal trials is enjoined by the Constitution, but delays will occur in spite of every effort to expedite the result. Time for proper deliberation is indispensable, nor is it reasonable to expect that an error will be corrected before it is discovered. Beyond all doubt an erroneous judgment may be vacated and set aside if the error is discovered within the term, and when such a judgment is se . aside the case stands just as it would have stood if the erroneous judgment had never been passed, as the proceeding is still *in fieri* until the regular sentence is imposed.† Errors even in the administration of criminal law will occur, and the ends of justice imperatively require that when they do occur there shall be some appropriate mode for their correction without discharging a prisoner legally convicted, as it cannot be admitted that an error of the court in passing the sentence of the law can have the effect to expiate the offence of the prisoner or to condone the criminal act of the offender.

4. All other objections failing, it is contended in the next place that the fact that the clerk deposited the amount of the fine imposed by the first sentence to the credit of the Treasurer of the United States the day before the second sentence was passed operated as an estoppel against the act of the court in vacating the first sentence and imposing the existing sentence.

Dates are of much importance in this case, and by reference to the petition subsequently presented to the circuit judge it appears that a habeas corpus in behalf of the prisoner was issued by the district judge on the same day the clerk deposited the amount of the fine as aforesaid, and that the writ of habeas corpus was made returnable on the fol-

---

* Easterling *v.* State, 35 Mississippi, 212; Jeffries *v.* State, 40 Alabama, 384.

† 3 Blackstone's Commentaries by Cooley, 407; Cook *v.* Wood, 24 Illinois, 296; Taylor *v.* Lusk, 9 Iowa, 445.

lowing day, which is the day when the illegal sentence was vacated and set aside and when the sentence authorized by the act of Congress was imposed, and much reason exists to suppose that the clerk was induced to make the deposit thus early in order that the prisoner might have the benefit of that proof in the hearing upon the petition for habeas corpus, which was previously set down for the following day. If that deposit had not been made the amount of the fine would have remained in the registry of the court, in which case it might have been returned to the prisoner by the order of the court. Such a payment made under such circumstances cannot expiate the offence of the prisoner or condone the criminal act of which he was legally convicted by the verdict of a jury duly summoned, impanelled, and sworn.* Measures for the correction of the illegal sentence had been instituted in behalf of the prisoner, and it cannot be that the power of the court to perform the mandate of the act of Congress can be thwarted by the mere circumstance that the clerk of the court, of his own motion or at the suggestion of the prisoner or his counsel, deposited the amount of the fine paid to him by the prisoner to the credit of the Treasurer of the United States. When the first sentence was vacated and set aside the money paid to the clerk for the fine became *ipso facto* the money of the prisoner, and wherever it may be now it is his money, nor can it make any difference even if it be held that it cannot be paid back without the consent of Congress, as it is money which *ex æquo et bono* belongs to the prisoner. Money paid under a mistake of fact may be recovered back, and it does not change the legal status of the right because the holder happens to be the government, which cannot be sued.

Suggestions of various kinds are made to avoid, if possible, the force of the conceded fact that the conviction remains undisturbed and that it rests upon the solid foundation of a valid indictment, one or two of which will be briefly noticed.

Attention is called to the constitutional provision that no

---

* Cooley on Constitutional Limitations, p. 325.

Opinion of Clifford, J., dissenting.

person shall be subject for the same offence to be twice put
in jeopardy of life or limb, which, as Judge Story says, means
that a party shall not be tried a second time for the same
offence after he has once been convicted or acquitted of the
offence charged by the verdict of a jury, and judgment has
passed thereon for or against him.  But the existing sentence
is founded upon the same conviction as the first sentence,
which of itself shows that the provision referred to has no
application to the case, nor does the provision mean that the
accused shall not be tried a second time if the jury have
been discharged without giving any verdict, or, if having
given a verdict, judgment has been arrested upon it or a
new trial has been granted in his favor, for in such a case,
says the learned author, his life or limb cannot judicially be
said to have been put in jeopardy.*   What is meant by the
phrase "twice put in jeopardy of life or limb" has been
judicially defined, and the definition cannot now be en-
larged to help out a predetermined unsound judicial conclu-
sion.  It means that a party shall not be tried a second time
for the same offence after he has once been acquitted or
convicted, unless the judgment has been arrested or a new
trial has been granted, on motion of the party; but it does
not relate to a mistrial.†   Even in a capital case the court
may discharge a jury without their giving a verdict, when-
ever in the opinion of the court there is a manifest necessity
for such an act, or the ends of justice will otherwise be de-
feated; and for the same reason the court, during the same
term, may vacate an erroneous judgment and render the
judgment which the law requires.‡

One trial and verdict, says Cooley, must as a general rule
protect the accused against any *subsequent accusation* of the
same offence, whether the verdict be for or against him, and

* 2 Story on Constitution, § 1787;  Vaux *v.* Brook, 4 Reports, 39, *b;*  Fox *v.*
State, 5 Howard, 432; United States *v.* Marigold, 9 Id. 560; Moore *v.* State,
14 Id. 20.

† United States *v.* Haskell, 4 Washington, 410;  United States *v.* Perez,
9 Wheaton, 579.

‡ 2 Graham & Waterman on New Trials, c. 2, pp. 51–135.

whether or not the court is satisfied with the finding, if it be in his favor and he was put upon trial before a court of competent jurisdiction and upon an indictment which is sufficient in form and substance to sustain the conviction. But if the court had no jurisdiction of the suit, or if the indictment was so far defective that no valid judgment could be rendered upon it, or if by any overruling necessity the jury were discharged without a verdict, from the sickness or death of the judge or of a juror, or from the inability of the jury to agree upon a verdict, after reasonable time allowed for deliberation, or if the term of the court as fixed by law comes to an end before the trial is finished, or the jury are discharged with the consent of the defendant expressed or implied, or if the verdict is set aside, on motion of the defendant, or on a writ of error in a jurisdiction where provision for a second trial is made by law—in any of these cases the accused may be again tried for the same offence, and the rule is well settled that the former trial will afford him no protection or defence.[*]

Where the verdict and judgment are set aside on a writ of error in an appellate tribunal, if the law of the jurisdiction makes no provision for a second trial the prisoner must be discharged, but it is settled law that it is competent for the legislature to provide that on reversing the judgment in such a case the court, if the prior proceedings are regular, shall remand the case for the proper sentence.[†]

Exceptions of the kind have their foundation in necessity, as all experience shows that errors and casualties will sometimes intervene in the administration of criminal justice. *Autrefois acquit* or *autrefois convict*, where the indictment is valid and the conviction is regular, in a court of competent jurisdiction, is a bar to a second prosecution for the same offence, but even that rule is subject to all the exceptions named and to many others of like character.[‡]

---

[*] Cooley's Constitutional Limitations, 2d ed. 327.

[†] McKee v. People, 32 New York, 239.

[‡] 4 Blackstone's Commentaries, by Cooley, 335, note 5; Rex v. Emden, 9 East, 437.

Beyond all doubt it is the duty of the court to render the judgment required by law in the first instance, but the experience of ages makes it evident that mistakes in that behalf will sometimes occur, even in the courts of general jurisdiction, and hence the rule, which may be traced to the very origin of the common law, that a court may vacate and set aside an erroneous judgment, during the same term, and render in its stead the judgment required by law.

Trials upon bad indictments are governed by the same rule, and in my judgment the provision can have no application whatever in a case like the present, where the conviction is undisturbed and the illegal sentence is vacated and set aside as soon as the error is discovered. Judge Story, it is said, decided that a new trial could not be granted in the case of a good indictment after a trial by a competent and regular jury, whether the accused was acquitted or convicted, and the argument is that if a new trial cannot be granted in such a case that it is not competent for the court to vacate an illegal sentence and impose another, even though the latter be in substance and form what the law requires.

Even should it be admitted that a new trial cannot be granted in such a case, it by no means follows that the action of the Circuit Court in this case was unwarranted, as it is sanctioned by a long course of decisions founded upon acts of Parliament applicable to criminal as well as civil cases.*

New trials, however, in misdemeanors have always been granted in England in proper cases, as appears by numerous adjudications of the highest authority.†

Whether a new trial can be granted in felony in the courts of that country is more doubtful. Certainly it was decided

---

\* Bingham on Judgments, pp. 71–73.

† Arundel's Case, 6 Reports, 14; Rex v. Curril, Lofft, 156; Rex v. Simmons, 1 Wilson, 329; Rex v. Mawbey, 6 Term, 638; Rex v. Tremaine, 7 Dowling & Ryland, 687; Same Case, 5 Barnewall & Cresswell, 256; Campbell v. Regina, 11 Q. B. 810.

in the case of *Regina* v. *Scaife et al.*,\* that a new trial may be granted in such a case.† But in certain later cases it is decided the other way.‡ Be that as it may, it is nevertheless settled law in this country that a new trial may be granted in favor of the prisoner, whether the charge be felony or only a misdemeanor.§ Much effort was expended by Judge Story in the case of *United States* v. *Gibert et al.*,‖ to prove the negative of that proposition, but his views in that regard have never been accepted by the bench or bar, as appears by the decisions of the Circuit Courts and by the decisions of nearly all of the State courts, many of which are collected in the following reported cases: *People* v. *Morrison*,¶ *United States* v. *Williams et al.*,\*\* in which it is stated that since the decision in Gibert's case the point has been discussed in twenty of the States of the Union, in every one of which it has been held that a new trial may be granted on the application of the accused in any criminal case for good cause shown.††

Fine or imprisonment may be imposed in a case like the present, and the suggestion is that if the court by the second sentence had imposed a fine the prisoner would have been compelled to pay the fine a second time, but it is so obvious that the money in the registry of the court, or on deposit to the credit of the treasurer, belonged to the prisoner the moment the first sentence was vacated and set aside that it seems to be a work of supererogation to employ any time in discussing the point, and it is accordingly dismissed.

Authority to issue writs of habeas corpus is not claimed to be among the enumerated cases of original jurisdiction conferred upon the Supreme Court, consequently if it exists

---

\* 2 Denn Cr. C. 281.                    † Same Case, 17 Q. B. 238.

‡ Reg. *v.* Bertrand, Law Reports, 1 Privy Council, App. 528; Same Case, 10 Cox Cr. C. 621; Reg. *v.* Murphy, Law Reports, 2 Privy Council, App. 546.

§ 1 Leading Criminal Cases, 584; Commonwealth *v.* Green, 17 Massachusetts, 515.

‖ 2 Sumner, 37.

¶ 1 Parker's Criminal Cases, 625; 1 Leading Criminal Cases, 2d ed. 587.
\*\* 1 Clifford, 17.

†† Bishop's Criminal Law, 5th ed. § 1004.

at all, it must be found in the appellate power of the court, which is given with such exceptions and under such regulations as Congress may make, from which it follows that the appellate jurisdiction conferred by the Constitution can only be exercised by this court in pursuance of an act of Congress conferring the authority and prescribing the mode in which it shall be performed.*

Power to grant the writ of habeas corpus was never intended to confer authority upon this court to review the judgment of a Circuit Court in a criminal case, and hence it follows that this court cannot look beyond the sentence where the tribunal which pronounced it had jurisdiction of the case.†

Enough has already been said to show that the judgment under which the prisoner is held is perfect in form, and inasmuch as he was put to trial upon a valid indictment and was duly convicted of the offence charged in the indictment, I am of the opinion that he is not entitled to be discharged under the writ of habeas corpus.

Mr. Justice STRONG also dissented.

---

* Wiscart *v.* Dauchy, 3 Dallas, 327; United States *v.* More, 3 Cranch, 172; Durousseau *v.* United States, 6 Id. 308.

† Ex parte Kearney, 7 Wheaton, 38; Ex parte Watkins, 3 Peters, 193; Johnson *v.* United States, 3 McLean, 89; Ex parte Van Aernam, 3 Blatchford, 160; Barry *v.* Mercein, 5 Howard, 103; Ex parte Gifford, 5 American Law Register, New Series, 659; 1 Curtis's Commentaries, § 240, p. 259; Ex parte Burford, 3 Cranch, 448.