Opinion of the Court,
by Judge Mills.
THIS is a proceeding in the county court, against the now appellee, for failing to list for taxation, á bilHard table; and tlje case was once before in this court, and reversed at the instance of the now appellee. 3 Marsh. 465.
, On the return of the cause to the court below, the parties resorted to the mode of trial by jury, and after the evidence was given in, similar to what was before used in the case, and the arguments of counsel were progressing or liad ended, the bill of exceptions states that the counsel for the Commonwealth moved the court to confine the jury, in their investigation of this cause, to the facts as detailed by the witnesses, and the law growing out of those facts; which motion the overruled, and permitted matters of law to be to the jury, which transpired at the December court next preceding, and then to decide upon the law 1 3
There is some difficulty in understanding from this bill of exceptions, when taken alone, what matters they were, which transpired at the preceding December court, on which the defendant below attempted to rely in argument before the jury. We are, however, told by the bill of exceptions, that they were matters of law, and not fact; and by a bill of exceptions taken on the part of the appellee himself, we are informed that he •moved the court to dedde in his favor, and to direct his discharge, because a previous jury had been sworn, and had heard the evidence in the cause, at the ceding December court, and did not agree in their diet, until the court-was about to adjourn, when they discharged the jury and continued the cause, and therefore it was insisted that he could not be -again tried. This question the court decided against him; and this appears to be the same subject which the uefendant then brought up, as matter of defence before the jury, by appealing to them, from the decision of the court, which the court permitted, because, they say ¡the bottom of the exceptions of the Commonwealth, *138 their opinion was founded oh the broad expressions of ^aw’ rela*áve to the jurors being triers of the law as well as the facts. We also discover that the event of discharging a former jury did' happen at the preceding December court. There can, therefore, be but little doubt, that this is the matter of law on which the appellee relied before the jury, and from which the court refuged to restrain his counsel in the argument of the ° cause.
They must be and cannot1’ be given in evídence under the general issue.
A final judgment or ver^ood°indictmentforthe same offence, brin’ the* ar t”mthinPthe benefit of that olau*? the cons i u ion.
The power of a court to •eep- L ^ury together, ceases with the term of the court.
courts possess similar, & no other power. County
Courts should not permit counsel to for^hie’’ur6" p^ints of how settled by blem.
r . In cases of felony, an indulgenco tedyby°(heaQ" court, to compare the law with the meriV'of.the case; but'not to try every that^a in "chi-case,
*138 The first possible ground which occurs to this court, which can be urged in favor of the doctrine of the apPe^ee> that the cause was discontinued by the proceedings at the former December court. It is true, as said in the former opinion, the proceedings in this cause Par^a^e °f the nature of criminal proceedings, and it is equally true, that formerly, by common law, some proicess of this nature, and especially proceedings to outlawry, were held to be discontinued, if there was any cflastn tke proceedings. This rule, however, was changed by statute in England, and ever since, the courts of that country, as well as the American courts, who took their laws from them, have held that acts which formerly produced such chasms in general process, do not now alter its general course. See 1 Chit. Crim. Law, 297. In accordance with this principle, the legislature of this state has provided, that “if a court shall not sit in any term, or shall not continue to sit the whole term, or before the end of the term shall no(. |lave heard and determined all matters ready for their decision, such matters and thing depending in court and undetermined, shall stánd continued until the next succeeding term. If, from any cause, the C0ln’t shall not sit on any day in a term, after it shall have been opened, there shall be no discontinuance; but so soon as the cause is’removed, the court shall proceed to business, until the end of the term, if the business depending before them be not sooner despatched. c t A. r ,°rr * ®ee 1 Dig. L. K. 370.
There could, then, be no prelext for contending that this proceeding was discontinued, because the jury and court had not “determined” it, before the end of the term. Besides, the court, on discharging the jury, regularly continued the cause.
The only remaining ground on which the appellee could rely for his discharge, is, that the constitution, of *139 this state, in the 12th section of the 10th article, provides, that no person shall, for the same offence, be twice put in jeopardy of his life or limb. Under this clause, it may be contended, that putting the offender on his trial before a jury, who had the right of nouncing finally his guilt or innocence, exempts him from being again brought before another, if the former do not agree, and that the Commonwealth has no right to call or swear two or more juries against him. This construction of this clause of the constitution we think entirely too broad. Every person acquainted with the history of governments, must know, that state trials have been employed as a formidable engine in the hands of dominant administration, and that on a revolution sentiment, those who have been acquitted of all crime, under a former reign, might be subjected anew to prosecution, and that a despot; by frequently arraigning and trying an accused political enemy, might ultimately put him down, so that he could no longer annoy the existing power. To prevent these mischiefs, the ancient common law, as well as magna charta itself, provided, that one acquittal or conviction should satisfy the law; or, in other words, that the accused should always have the right secured to him, of availing himself of pleas of autrefois acquit, and autrefois convict. To perpetuate this wise rule, so favorable and necessary to liberty of the citizen, in a government like ours, so frequently subject to changes in popular feeling and sentiment, was the design of introducing into our constitution the clause in question. It indubitably secures every citizen the right to plead and rely on a former conviction or acquittal, as conclusive in his favor; it does not intend to make the proceedings against accused, if they stop at any stage short of this, a plea in his favor. If, then, we ascertain what is necessary . to constitute, at common law, a good plea of autrefois acquit, or autrefois convict, we shall have what constitutes a complete defence under this clause of the constitution.
Now, it is well settled, that these two pleas must be pleaded in bar, and that they cannot be given in evidence under the general issue; that when such pleas are made, the great question is, whether the former indictment pleaded in bar, would admit of the same evidence with the one to which it is pleaded. It is, there *140 fore, necessary that they should be precisely the same, although not stated precisely in the same words, and it must also be sufficient, and it must be a legal acquittal or conviction by judgment upon trial by verdict of a jury, or, in ancient times, by battle. If the former acquittal or conviction be erroneous, it is still conclusive, until reversed or arrested. On the contrary, if there appears any substantial defect in the indictment pleaded in support of the plea of a former acquittal, whereby the defendant was in imaginary, and not real danger, it seems the plea is not good; and even if a former judgment is reversed, and the indictment quashed, the accused aiav be arraigned and tried de novo. 1 Chit. Crim. Law. 368-377.
It is not, therefore, possible to support the defence of a former acquittal, by any thing short of a final judgment or verdict, on a second indictment for the same of-fence; and the accused, in this case, could not, with any propriety, rely on the discharge of the former jury, without any verdict either for or against him, and the order of the court discharging the jury, did not discharge him. It has already been decided by this court, in a civil action, (Brooks vs. Clay, 1 Litt. Rep.,263,) that the power of the courts to keep a jury together after the term ceases, ceases also. They have not more pow■er in criminal cases. Where, then, can be the impropriety of the court discharging them at once, at the close of the term, when the bare act of adjournment discharges them? It is true, the county courts are not limited in their terms, except by the business before them; but it would impose upon them great hardships, to say, that they should keep their courts still open, without compensation, to wait upon a divided jury, in a case like the present, when all other business was 'done. It is not intended to say that they would have any power to discharge a jury, at their caprice, at any time; but when, according to the course of things, their final adjournment had arrived, and that act itself would discharge the jury, we see no impropriety in permitting them to enter the discharge at once.
But even if in this we should be mistaken, and that ■court should have erred in discharging the jury, it would by no means follow, that such error would discharge the accused. The process against him, would remain by law, the error of the court notwithstanding,
*141 The court below, therefore, rightly decided that the appellee was not discharged on this account; and the remaining question is, was the court below wrong in refusing to coerce that decision, and in permitting the party to appeal therefrom to the jury, in their presence? As decided by this court, in the case of Smith vs. Morrison, 3 Marsh. 83, it was clearly incorrect to permit the opinion, extracted first from the court, to be questioned before the jury, and suph practice ought to be allowed by no court which respects its own standing. If the practice can have an apology, it must be where it is done by the indulgence of the court in a case of felony, where there is no appeal. The court, however, in the present instance has attempted to justify it on the ground that the law uses broad expressions, that jurors are triers of the law as well as fact.
It is evident, that the privilege of juries in criminal case.s, is greater than in civil. In civil cases, they were subject to attaint for a false verdict. This could not be so in criminal cases. In one case their verdict may be set aside by the court for error of law or fact; in the other, the court, if in favor of the accused, cannot thus revise the verdict, or direct a venire de novo. But surely it cannot be contended, that on a criminal trial, the functions of the court dwindle to the mere keeping of order, while the jury discuss and decide every legal question, in derogation of the universal rule, which assigns the facts to the jury, and law to the court. But however extensive the privileges of a jury may be, to compare the law with the facts, on the merits of the case, surely it cannot be contended, that it is the duty of a jury to try every legal question, in a criminal proceeding. Many such questions, belong to the court alone, and must be decided by it. Who ever saw motions to qursh indictments, to arrest judgments, to determine on discontinuances, to judge of demurrers apd of the validity of pleas in bar, brought before.a jury? Certainly such questions belong to the court exclusively, and its decision thereon is final. Such, however, is the present case. The appellee contended, that the process was discontinued, or that he had a plea in bar, arising from the discharge of a former jury. This plea be made, and the court, although there are, in this, and like cases, no pleadings in writing, decided against him as clearly as if it had been done on demurrer, and *142 the revision of this purely legal question, without the least mixture of fact with it, is brought again before the jury for their revision. This was calculated to embarrass them and lead their minds from their real duty, to what did not belong to their province, and, therefore, conduced to draw them to an erroneous conclusion, and the court below erred in permitting it to be done. See Jacob’s Law Die. title Jury.
The judgment must, therefore, be reversed, and the verdict be set aside, and the cause be remanded for further proceedings not inconsistent with this opinion..