State v. Gray.

THE STATE v. WM. H. GRAY.

1. The defendant was convicted of adultery and sentenced to imprisonment at hard labor for six months in the state prison. Being brought before this court by *habeas corpus,* it was *held,* that he could not be imprisoned at hard labor for this offence.

2. This court having no power to pass a proper sentence, or to remand the prisoner to the court below for re-sentence, he was discharged.

On *habeas corpus.*

Argued at November Term, 1874, before Justices VAN SYCKEL and WOODHULL.

The defendant was convicted of adultery in the special sessions of Essex county, and sentenced on the 4th of September, 1874, to imprisonment, at hard labor, in the state prison for the term of six months. He was brought by *habeas corpus* before this court, and motion made for his discharge from custody, because the judgment was illegal.

For the defendant, *S. Kalisch.*

The opinion of the court was delivered by

VAN SYCKEL, J. Section 16 of the act for the punishment of crimes, (*Nix. Dig.* 195,) provides that every person convicted of adultery shall be punished by fine not exceeding $100, or by imprisonment not exceeding the term of six months. In every section of this act, prior to the 16th, the crime denounced is declared to be punishable by imprisonment at hard labor.

The omission of these words in the 16th, 20th, and 21st sections, while they are found in the sections which precede and follow them, could not have been unintentional. Adultery was not indictable at common law, being punishable only in the ecclesiastical courts, and, therefore, the legality of the judgment by which the defendant was incarcerated in this case must rest wholly on the provisions of the 16th section of our act concerning crimes. That section authorizes imprisonment only, and the words "hard labor" cannot be added to it without enlarging the language of the statute, and increasing the measure and severity of the punishment. The act for the government and regulation of the state prison, (*Nix. Dig.* 901,) which is in *pari materia*, provides that every person sentenced to hard labor and imprisonment under the laws of this state for any time not less than six months, shall be delivered to the keeper of the state prison, but no warrant is given for the confinement therein of any one who may not be sentenced to imprisonment at hard labor.

In my opinion, the only sentence which can be imposed under the 16th section is the specified fine or imprisonment,

and that under such judgment the defendant could not lawfully be committed to the state prison.

The question which chiefly occupied the consideration of the court in this case is, whether we could pronounce the proper judgment here, or send the prisoner to the court below to be re-sentenced according to law.

In *Rex* v. *Ellis*, 5 *Barn. & Cress.* 395, the court below adjudged that the defendant be transported for fourteen years. In error to the King's Bench, Lord Tenterden held that seven years transportation was the extreme limit of the punishment, and that the judgment being erroneous, it could not be sent back to be amended. In this case it was suggested that the judgment of the inferior court might be regarded as a good judgment for transportation for seven years, treating it as void as to the excess, but Lord Tenterden, after taking time for consideration, decided this point against the crown.

In the later case of *The King* v. *Bourne*, 7 *Ad. & Ellis* 58, Lord Denman, Justices Littledale and Patteson concurring, refused, where an improper judgment was given below, to pronounce such judgment as should have been given, or to remit the case to the court below for judgment, on the ground that they had no such power. This was undoubtedly the English rule, until otherwise regulated by statute, and it has been generally recognized as authority in this country.

In *Shepherd* v. *Commonwealth*, 2 *Metc.* 419, where the judgment below was erroneous, Chief Justice Shaw cited the English cases, and held that he could not render a new judgment, or send the case to the court below for judgment.

The judgment was, therefore, simply reversed, and the prisoner discharged, as had been done in the English cases. *Stevens* v. *Commonwealth*, 4 *Metc.* 360; *Christian* v. *Commonwealth*, 5 *Metc.* 530.

To remedy this defect a statute was passed in Massachusetts, in 1851, authorizing the superior court either to pass judgment in due form, or to remand the case for that purpose to the inferior jurisdiction. *Jacquins* v. *Commonwealth*, 9 *Cush.* 279.

In *Daniels* v. *Commonwealth*, 7 *Barr*. 375, the Pennsylvania court admitted the rule of the English cases to be as I have stated it, and put its power, to modify the judgment of the court below, upon their statute of June 16th, 1836.

In *The People* v. *Taylor*, 3 *Denio* 91, Chief Justice Bronson, upon the authority of the English and Massachusetts cases, declared that if a wrong judgment be given against a defendant, which is reversed on error, the court of review can neither give a new judgment against him, nor send the case back to the court below for a proper judgment.

In *Shepherd* v. *The People*, 25 *New York* 406, and *Ratzky* v. *The People*, 29 *New York* 132, the Court of Appeals cited the case in Denio with approbation, and held that it was only by force of their subsequent statute, passed in 1863, that the rule was changed.

Many other cases, which support this doctrine, are referred to by Justice Clifford, in *Ex parte Lange*, 18 *Wall*. 184, with the remarks, "that they were decided in appellate tribunals, and in jurisdictions where there was no legislative act conferring any authority to impose the proper sentence, or to remand the prisoner to the court of original jurisdiction for that purpose, and of course the only judgment which the appellate court could render was that of reversal, which operated to discharge the prisoner."

In this state there is no positive law regulating this subject, nor has this question, so far as I am informed, been discussed in our courts, and I, therefore, would feel constrained to follow the almost unbroken current of decision by judges of eminent ability, if the precise point, determined in those cases, was now under consideration.

The writ of *habeas corpus*, in this case, does not bring up the record of the proceedings and judgment below for review; it operates only on the body of the defendant and raises the single question whether he is legally in custody.

This court may, as has been done in this case, award a *certiorari* to produce the record for its inspection, but it has

no power to reverse the judgment of the inferior jurisdiction ; it can simply declare that by virtue of the sentence, if manifestly illegal, the defendant cannot be longer restrained of his liberty. The court which rendered the judgment cannot vacate it, or render a new judgment after the term at which it was pronounced is ended, or the judgment is executed, and the punishment partly borne.

The judgment subsisting, but being illegal and void, it is no warrant for retaining the defendant in custody, and it seems clear that no new judgment can be passed in this court or the court below.

In accordance with these views, the defendant was discharged from custody at the last term of this court.

Justice WOODHULL concurred.