STATE BOARD OF FOREST PARK RESERVATION COMMISSIONERS, PROSECUTOR, v. CHARLES McCLOSKEY, DEFENDANT.

Submitted December 3, 1914—Decided June 10, 1915.

1. In a proceeding on a complaint under "An act for the appointment of fire wardens, the prevention of forest fires and the repeal of sundry acts relating thereto," charging that the defendant did "set fire to and burn and cause to be burned, waste land, brush land and forest land." proof of facts or circumstances which merely raise a suspicion that the defendant might have caused the fire, it is not sufficient proof from which a reasonable inference can be drawn that it was the defendant who set fire to the brush or caused it to be burned.

2. It is incumbent upon the complainant, under the clause of section 11 of the act before referred to, to prove affirmatively that the defendant willfully set fire to and burned, or caused to be burned, the waste land, &c. The mere fact that he set fire to a pile of brush on his own land does not constitute an offence under that clause.

3. By a proviso to the above act it is declared that permits shall not be necessary for burning waste, &c., when the fire is set in the public road, garden or ploughed field at a distance of not less than two hundred feet from any wood land, brush land or field containing dry grass or other inflammable material. In the absence of proof of the distance from the ploughed field where the fire was set to the brush land it will not be presumed that it was less than two hundred feet.

4. A penal statute must be strictly construed and its scope will not be extended beyond the plain and general meaning of its words, and, under the clause of the statute upon which the complaint was based, the setting fire to, burning or causing to be burned, waste land, &c., must be the result of a willful act of the defendant, and not a mere negligent one, to constitute an offence under that clause.

On *certiorari* to the Burlington Common Pleas Court.

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Josiah Stryker* and *John W. Wescott*, attorney-general.

For the defendant, *V. Claude Palmer*.

The opinion of the court was delivered by

KALISCH, J.   The State Board of Forest Park Reservation Commissioners made complaint before a justice of the peace in Burlington county against the defendant for a violation of section 11 of an act entitled "An act for the appointment of fire wardens, the prevention of forest fires and the repeal of sundry acts relating thereto," approved April 18th, 1896, as amended by an act approved March 15th, 1911, in that on the 4th day of May, 1912, the defendant did in the township of Southampton, in the county of Burlington, set fire to and burn and cause to be burned waste land, brush land and forest land located therein on lands occupied by the defendant, &c.

That part of the eleventh section of the act (*Pamph. L.* 1911, *p.* 56) on which the proceeding against the defendant is based reads: "No person shall set fire to or burn or cause to be burned any waste land, brush land or forest land."

The maximum penalty provided by section 12 of the act for a violation of section 11 of the act is $200 and the minimum $50.

The justice of the peace, before whom the complaint was made and the defendant tried, found the defendant guilty and gave judgment that the complainant recover of the defendant $50 penalty and $5.50 costs, and that execution issue, &c.

From that judgment the defendant appealed to the Court of Common Pleas, which court, sitting without a jury, after the complainant had rested its case, on motion of counsel of defendant, granted a nonsuit, upon the ground that the complainant failed to establish a *prima facie* case against the defendant. It is the propriety of this ruling which is challenged by the prosecutor in *certiorari*.

The prosecutor alleged diminution in the record and return of the Court of Common Pleas to the writ of *certiorari,* and obtained from this court a rule requiring the trial judge to certify, *inter alia,* a full and complete statement of the facts proven before him at the trial of the case, and a full and complete statement of the evidence taken before him on the part of the plaintiff, the present prosecutor.

In obedience to the rule the trial judge certified the facts and the evidence which were before him.

The nature of the objection to the legal propriety of the trial judge in giving a judgment of nonsuit, makes it necessary to review and consider the facts and testimony certified to this court by the trial court in order to ascertain whether or not there was anything in the testimony from which a reasonable inference might have been drawn that the defendant did set fire to or burn or cause to be burned any waste land, brush land or forest land.

The facts upon which the trial judge based his judgment were, in substance, as follows: Mark Moore, a witness for

the plaintiff, testified that while on his way home, on May 4th, 1912, from Vincentown, he saw smoke arising in the distance, indicating fire, but that he did not go to the scene of the fire that day.    On the following day he went to defendant's home and examined the burned ground which was partly on defendant's farm and partly on the farm of one John Taylor, and included brush land and forest land.    At the time of the fire, defendant was living in a house situate on the northerly side of a public road leading toward Friendship, and running generally in an easterly and westerly direction.    To the northeast of defendant's house, and on his land, was a ploughed strip of land planted at that time with potatoes.    To the east of this strip and adjoining it was a mound or ridge.    To the north of the house and west of the ploughed strip there was Indian grass, and to the westward of this there was brush land.    On the day of the fire the wind blew from the southeast to the northwest.    Along the mound or ridge mentioned there was, on the 5th day of May, an indication of brush piles having been burned.    The Indian grass to the west of the ploughed ground had been burned, and the fire had extended through the Indian grass to the brush land.    That the witness on a later day talked to the defendant about the fire, in which conversation the defendant told him that when he returned home from Vincentown on the day of the fire, he had seen two boys sitting on the ridge, and that there was no fire there or anywhere else at that time; that after the boys had left, the defendant saw the fire for the first time; that a few days before the fire the defendant told the witness that he had some brush in back of his house which he wanted to burn and was going to apply for a permit; that on the day of the trial, in the Common Pleas Court, the defendant said to the witness that witness was a damned liar, because witness had testified, at the trial before the justice of the peace, that defendant had told witness that when defendant had returned home on the day of the fire, the fire had not yet started, but that defendant saw two boys on the ridge; that defendant was not home when the fire started.    Another witness for the plaintiff testified

that on the day of the fire the defendant's son had dinner with the witness; that the witness lived on the farm adjoining defendant's; that at one o'clock he went to his field accompanied by defendant's son to resume his ploughing. After he had been ploughing for some time he saw defendant's horse and wagon going along the road from the direction of Vincentown toward defendant's house, the defendant's house being from one-half to three-quarters of a mile from where he, the witness, was ploughing, and which house was not always in view from where he was working.

That immediately after seeing defendant's wagon on the road, defendant's son left the witness and went in the direction of his home. Some time after the boy left he saw smoke in the direction of defendant's place. Shortly after the witness observed the smoke, defendant's son came running and asked his assistance to put out the fire. This the witness did. At the time the witness reached the fire it was burning in the Indian grass at the north and west of the house, and was in the brush land westward of the Indian grass.

The testimony of another witness for the plaintiff who visited the scene of the fire on the 23d of May, 1912, for the purposes of making an examination, was substantially like that given by Moore. He stated with positiveness that the fire started on the ridge.

The contention of counsel of prosecutor is, that because there is proof that the defendant had, at the time of the fire, piles of brush upon his place, which he expressed a desire to burn, and because the fire started in the brush pile and burned with the wind; and because upon his, the prosecutor's assumption, the defendant admitted to Moore and Torrey, witnesses for the plaintiff, that he was at the place at the time the fire started, and because the defendant told contradictory stories as to what he saw before and at the time the fire started; that, therefore, the trial judge was legally bound to draw the inference that the defendant was the person who set fire to and caused to be burned the forest land, &c.

Counsel of the prosecutor overlooks the fact that at the time the defendant expressed a desire to burn the brush pile

he said he was going to apply for a permit for that purpose. The only permissible inference from that would be that the defendant did not intend to burn the brush pile, without permission from the proper authority.

As to the other circumstance, that the defendant admitted to either Moore or Torrey, or to both, that he was at the place, at the time the fire started, there is testimony that the defendant admitted, to one or both of the witnesses, that he was at the house when the fire started, which is far from admitting that he was at the place at that time.

The other circumstance urged is that the defendant contradicted himself when he said to one of the witnesses that he was not at home when the fire started.

We are unable to perceive that, even if the defendant had willfully told an untruth as to where he was at the time the fire started, how that circumstance, either alone or in conjunction with the other circumstances, can raise a reasonable inference that he caused the fire.

Proof of facts or circumstances which merely raise a suspicion that the defendant might have caused the fire is not enough.

Counsel of prosecutor, in support of his contention that the judgment of nonsuit here under review was improperly granted, refers to *Weston* v. *Benecke,* 82 *N. J. L.* 445.

In that case, it appeared that there was evidence from which a reasonable inference could be drawn, tending to establish the allegations of the complaint, and therefore the nonsuit was held to be improper. But, in the present case, there is no evidence from which any such reasonable inference can be drawn. And it is this essential difference, in the nature of the evidence between the two cases, that makes it plain that the court below, under the well-established legal rule reiterated and followed in *Weston* v. *Benecke, supra,* properly granted the nonsuit.

We think the case before us is utterly barren of any fact or circumstance from which a reasonable inference can be drawn that it was the defendant who set fire to the brush or caused it to be burned.

But even if the proven facts permitted the inference that the defendant was the person who set fire to the brush on his own land, we are unable to discover any evidence upon which the court could properly have based a finding that the defendant did set fire to and burn, and cause to be burned, waste land, brush land and forest land. For it distinctly appears that between the place where the brush was set on fire and the Indian grass and brush land, there was a ploughed strip of land. There was no apparent communication between the two. In this connection, it is pertinent to observe that by a proviso to section 9 of the act (*Pamph. L.* 1908, *p.* 425), it is declared that permits shall not be necessary for burning waste, fallows, stumps, logs, brush, dry grass or fallen timber, when the fire is set in the public road, garden or ploughed field at a distance of not less than two hundred feet from any wood land, brush land or field containing dry grass or other inflammable material.

From this it is apparent that if the fire had been set by the defendant in the ploughed field, and the distance was not less than two hundred feet from the brush land, he needed no permit to do so. The fact that the ploughed field was between the place where the fire was set and the Indian grass and brush land, in the absence of proof as to how many feet intervened between them, it will not be presumed that it was less than two hundred feet.

The proceeding against the defendant was not for letting the fire escape to brush land, &c., but was based upon the distinct allegation that the defendant did set fire to, burn, and cause to be burned, brush land, &c.

The statute is a penal one. It must be construed strictly. Its scope will not be extended beyond the plain and general meaning of its words.

The setting fire to, burning, or causing to be burned, under the clause of the section of the statute, must be the result of a willful act of a defendant and not a negligent one, in order to constitute a penal offence within the terms of the act.

The statute upon which the action to recover the penalty is based is a *quasi*-criminal one. The foundation of the pro-

ceedings is a complaint under oath. Upon this complaint the magistrate before whom it is made may issue process in the nature of either a summons or warrant. *Pamph. L.* 1906, *p.* 226, § 13. Where a warrant is issued the magistrate may require the defendant to give bail for his appearance at the trial, and in default thereof may commit him to the county jail until the trial. *Pamph. L.* 1911, *p.* 57, § 16.

Where the action has been begun by summons or warrant, and a judgment rendered in favor of the complainant, the magistrate is required to direct the issuance of an execution against the goods and chattels of the defendant for the amount of penalty and costs and for want of sufficient goods and chattels whereon to levy and make the same, to take the body of the defendant and convey him to the county jail, to be there confined until the penalty and costs be fully paid or until he be delivered by due course of law. *Pamph. L.* 1906, *p.* 227, § 13.

It was therefore incumbent upon the complainant in the present case to prove affirmatively that the defendant willfully set fire to and burned, or caused to be burned, the brush land, &c.

The mere fact that he set fire to a pile of brush on his own land did not constitute the offence charged in the complaint.

There must be an intentional setting fire to and burning, and causing to be burned, in order to bring such act within the scope and meaning of this clause of the section of the act.

The case of *Hearne* v. *Garton et al.,* 2 *El. & E.* 66; 105 *E. C. L.* 64, rested on the one hundred and sixty-eighth section of a statute, designated as "the Great Western Railway act," which provided "that every person who shall send or cause to be sent by the said railroad any aquafortis, oil of vitriol, gun powder or other goods of a dangerous quality, shall distinctly mark or state the nature of such goods on the outside of the package, or give notice in writing to the servant of the company with whom the same shall be left at the time of so sending, or causing to be sent, on pain of forfeiting ten pounds for every default;" the collection of the penalty to be enforced by a distress warrant, and if there be no sufficient

distress, to imprison the offender for not more than three months; and the court held that in order to convict a person for an offence under the act for sending, or causing to be sent, a package of goods of a dangerous quality, it was incumbent upon the complainant to approve affirmatively that the person sending the same had knowledge of the dangerous quality of the goods. And it was further held that as the person sending the goods had been misled, as to the nature of the goods, and had no guilty knowledge of their dangerous character, they were not liable as senders of the goods within the meaning of the act.

The above case is cited, with approval, in an opinion by Chief Justice Beasley, in the Court of Errors and Appeals, in *State* v. *Halstead,* 41 *N. J. L.* 552 (on *p.* 596), as illustrative of the generally accepted view of the courts of England and of this country, that in expounding a penal statute, reference must be had to its context and effects so that such construction may be given to it as will prevent the act from being run into absurdity.

In *State* v. *Kuehnle,* 85 *N. J. L.* 220 (on *p.* 225), Mr. Justice Swayze, in commenting upon the doctrine laid down in State *v.* Halstead, says: "It was held in that case that with respect to statutory offences, the maxim that crime proceeds only from a criminal mind does not universally apply. But the great Chief Justice who spoke for this court in that case was too acute and accurate to fail to perceive and call attention to the fact that the real question is one of statutory construction. The legislature may if it will make an act criminal without regard to the criminal intent; the question is, has it done so?

"The construction of the statute in that case turned on the fact that the duty to be performed was a simple one, not subject to very great difficulties in its performance. In the present case the statute, if construed literally and as not requiring a corrupt motive, would lead to results that surely could not have been intended."

In the case of *Vandegrift* v. *Meihle,* 66 *N. J. L.* 92, cited by the prosecutor in support of its contention, it will be seen

that Mr. Justice Van Syckel, who delivered the opinion of the Supreme Court, had in view the principles of statutory construction enunciated in the foregoing cases, when he said (on *p.* 95): "There is nothing in the law or in the character of the forbidden act which indicates a legislative intent to make guilty knowledge a circumstance necessary to be proven."

The application of the well-recognized principle of statutory construction relating to penal laws, as above declared to the present one, leads us to the conclusion that the legislative intent was, that in order to bring the act of the respondent within the meaning of the clause of the section of the statute alleged to have been violated by him, it must appear that he intentionally set fire to and burned, or caused to be burned, brush land, &c., and there being no proof or circumstance which permits such an inference, that, therefore, the trial judge very properly granted the nonsuit.

Judgment will be affirmed.