THE STATE OF NEW JERSEY, PROSECUTOR-RESPONDENT, v. ROBERT LAIRD, DEFENDANT-APPELLANT.

Argued September 16, 1957—Decided November 12, 1957.

Mr. *John L. Miller, Jr.*, argued the cause for appellant (Mr. *Edward J. Bauer*, attorney).

Mr. *Christian Bollermann*, Deputy Attorney-General, argued the cause for the State (Mr. *Grover C. Richman, Jr.*, Attorney-General, attorney).

The opinion of the court was delivered by

HEHER, J. November 29, 1956, in the Municipal Court of the City of Camden, defendant was convicted on a complaint charging that on the prior October 29 he did operate a motor vehicle while under the influence of intoxicating liquor in violation of *R. S.* 39:4–50, as amended by *L.* 1952, *c.* 286, and was thereupon fined $200 and assessed costs of $25; the fine and costs were paid forthwith and the defendant was discharged. This, on the assumption of fact that defendant was a first offender, in accordance with the frame of the complaint itself. Action was also taken to effectuate the self-executing provision of the statute that one so offending shall also, for a first offense, "forfeit his right to operate a motor vehicle over the highways of this State for a period of two years from the date of his conviction."

January 18, 1957, some 50 days thereafter, defendant "was again apprehended" and "informed that inasmuch as he had been convicted [of a like offense] in October of 1947, he was a second offender," and so was directed to appear in the municipal court on January 28, 1957 for "re-sentencing." On the day named, pursuant to a finding of a previous offense

of the same class, the court resentenced defendant, on the summary conviction of November 29, 1956, to imprisonment for a term of three months and his driver's license was declared revoked for a period of ten years, both the mandatory consequences of a "subsequent violation" of the cited *section* 39:4–50. The license-forfeiture provision is couched in the same terms as for a first offense; only the period of revocation is different. There is no provision for a fine; the statute directs imprisonment only for a "subsequent violation."

The earlier breach of the act is admitted; and it seems to be the fact that this offense did not become known to the municipal court until sometime after the conviction of November 29, 1956 and sentence thereunder.

The County Court affirmed the judgment of the municipal court as thus revised; and we certified defendant's appeal to the Appellate Division, on our own motion.

 No question is made as to the *modus operandi* in subjecting the offender to the consequences of a "subsequent" violation of the act. The proceeding concerns a punitive offense, *quasi*-criminal in nature; and there is the same regard here as in strictly criminal cases for the essential civil rights and liberties designed to secure the individual against arbitrary action. *State Board of Forest Park Reservation Commissioners v. McCloskey,* 87 *N. J. L.* 470, 476 *(Sup. Ct.* 1915) ; *State v. Rodgers,* 91 *N. J. L.* 212 *(E. & A.* 1917) ; *Watt v. Wallerius,* 99 *N. J. L.* 370 *(Sup. Ct.* 1924) ; *State v. Rosenblum,* 100 *N. J. L.* 240 *(Sup. Ct.* 1924), affirmed 102 *N. J. L.* 125 *(E. & A.* 1925) ; *State v. Rowe,* 116 *N. J. L.* 48 *(Sup. Ct.* 1935), affirmed 122 *N. J. L.* 466 *(E. & A.* 1939) ; *Kruttschnit v. Hagaman,* 128 *N. J. L.* 246 *(Sup. Ct.* 1942) ; *Sharkey v. Wilkinson,* 133 *N. J. L.* 176 *(Sup. Ct.* 1945). A *quasi*-crime in its early technical sense is "the act of doing damage or evil involuntarily"; in its enlarged usage it embraces all offenses not crimes or misdemeanors, but in the nature of crimes; the prefix to the noun signifies resemblance, in a certain sense or degree; a class of offenses against the public "which have not been

declared crimes, but wrongful against the general or local public which it is proper should be repressed or punished by forfeitures and penalties." *Wiggins v. City of Chicago,* 68 *Ill.* 372 (*Sup. Ct.* 1873). Compare *State v. Snure,* 29 *Minn.* 132, 12 *N. W.* 347 (*Sup. Ct.* 1882). The word "crime" does not include "certain *quasi*-criminal acts or 'offenses' " such as *e. g.,* the violation of municipal ordinances "where the act is not made a crime by the general law of the state or by virtue of authority delegated by the state to the municipal corporation"; at common law, independent of statute, "punishments for the violation of municipal ordinances are treated as civil actions"; the imprisonment is not deemed to be punishment but rather the means of coercing the payment of the fine. 14 *Am. Jur., Criminal Law, sections* 2, 9; Annotation, 33 *L. R. A.* 33; 48 *L. R. A.* (*n. s.*) 156.

"*Quasi*-criminal" is not an empty label. The classification is in no sense illusory; it has reference to the safeguards inherent in the very nature of the offense, the punitive quality that characterizes the proceeding, and the requirements of fundamental fairness and essential justice to the accused.

The basic rule is that where the repetition of criminal action renders the accused liable to different and greater punishment, the subsequent offense is treated as a first offense unless the earlier crimes are included in the specification of the offense laid and proved on the trial; the usual practice is to allege the prior convictions in the indictment and to submit the factual issue thereby arising to the jury; and this course is a *sine qua non* save where the statute makes other adequate provision for the inquiry. The procedure is rooted in the fundamental common-law principle that in penal proceedings the accused shall be clearly informed of the charge he is called upon to meet; and this of necessity involves the elements of aggravation which under the statute enlarged the grade of the crime by enhancing the punishment. *State v. Lutz,* 135 *N. J. L.* 603, 605 (*Sup. Ct.* 1947). To the same effect: *State v. Burns,*

136 *N. J. L.* 601 (*E. & A.* 1948); *State v. Myers,* 136 *N. J. L.* 288 (*Sup. Ct.* 1947); *State v. Rowe, supra.*

Here, the statute itself, *section* 39:4–50, provides that one who has been convicted of a previous violation of the section need not be charged as a second offender in the complaint in order to render him liable to the punishment laid down for a second offense. Nevertheless, it is a basic principle of procedural jurisprudence that the accused be given, before sentence as for a second offense, notice and an opportunity to be heard as to the commission of the prior offense made a precondition to the greater punishment provided for its repetition.

But it is urged that "[a]fter the defendant has completely executed a sentence which was validly imposed upon him as shown by the record of the case, the power of the court over [the] sentence is exhausted"; and this was so here when the sentence as for a second offense was imposed.

The Attorney-General, on the other hand, contends that a person "illegally sentenced as a first offender under *R. S.* 39:4–50 may, under the authority of *R. R.* 8:7–11, be resentenced as a second offender even after the commencement of the execution of his illegal sentence"; and that although an "illegal sentence can be corrected even after it has been completely executed," here the original sentence had not been served when it was enlarged in that "only two months of [defendant's] two-year driver's license suspension had elapsed at the time of his resentencing," and "even absent a formal resentencing, the Director of the Division of Motor Vehicles may revoke a driver's license in accordance with the statutory mandate despite the trial court's failure to do so," citing *MacKinnon v. Ferber,* 16 *N. J. Super.* 390 (*App. Div.* 1951), certification denied 8 *N. J.* 613 (1952).

It was the rule at common law from early times that in criminal cases the record of the court was subject to amendment at any time during the term in which the judgment was rendered, and the practice in this regard included revision of the sentence during the term, but not to impose a new and different sentence increasing the punishment after

the execution of the sentence had begun, even during the term. A judgment so providing is void at common law, and the original judgment remains in force. *Commonwealth v. Weymouth,* 2 *Allen (Mass.)* 144 *(Sup. Jud. Ct.* 1861); *Commonwealth v. Foster,* 122 *Mass.* 317 *(Sup. Jud. Ct.* 1877); *Fine v. Commonwealth,* 312 *Mass.* 252, 44 *N. E.* 2*d* 659, 145 *A. L. R.* 392 *(Sup. Jud. Ct.* 1942); *Brown v. Rice,* 57 *Me.* 55 *(Sup. Jud. Ct.* 1869); *United States v. Benz,* 282 *U. S.* 304, 51 *S. Ct.* 113, 75 *L. Ed.* 354 (1931). This doctrine is founded in the common-law and constitutional right against double punishment for the same offense. *Ex parte Lange,* 18 *Wall.* 163, 21 *L. Ed.* 872 (1874). See *Article* I of the 1947 *State Constitution,* as read in *State v. Labato,* 7 *N. J.* 137 (1951).

In *Lange,* Mr. Justice Miller said: "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense"; in civil cases, the principle is expressed by the maxim that "no man shall be twice vexed for one and the same cause," and in the criminal law, by the precept that "No one can be twice punished for the same crime or misdemeanor"; the common law "not only prohibited a second punishment for the same offense, but it went further and forbid a second trial for the same offense, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted"; hence, the plea of *autrefois acquit* or *autrefois convict* is a good defense; the ancient common law, as well as Magna Charta itself, provided that "one acquittal or conviction should satisfy the law," citing *Commonwealth v. Olds,* 5 *Litt.* 137 *(Ky. Ct. App.* 1824), and our own *State v. Cooper,* 13 *N. J. L.* 361 *(Sup. Ct.* 1833). It was inquired:

"For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? * * * It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that con-

viction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value?"

There, the sentence imposed a fine *and* imprisonment, although the statute permitted only a fine *or* imprisonment, and the fine was paid; and the holding was that the court could not, even during the term, modify the judgment to provide for imprisonment in lieu of the earlier sentence, and the judgment having been executed in full satisfaction of one of the alternative penalties of the law, the power of the court was exhausted.

The general rule elsewhere is that where there has been a general verdict of guilty upon an indictment containing several counts for distinct offenses, and the defendant has been sentenced upon some of the counts and imprisoned, he cannot, at a subsequent term, be sentenced anew upon another count in the same indictment, even if the first sentence was erroneous. *Commonwealth v. Foster, supra.*

And *a fortiori* this is so as to an attempted increase of the punishment after the judgment has been fully executed. The sentence is the final judgment in a criminal case, and ordinarily the end of the case, save as provided otherwise. *Fine v. Commonwealth, supra.* At common law, "[A] single sentence exhausts the power of the court to punish the offender, after the term is ended or the judgment has gone into operation, * * *." *State v. Addy,* 43 *N. J. L.* 113 (*Sup. Ct.* 1881), Dixon, J., citing *Ex parte Lange, supra; Commonwealth v. Foster, supra.* Where the sentence was illegal, the court which rendered the judgment could not vacate it or render judgment anew after the term at which it was pronounced had ended or the judgment had been executed and the punishment partly borne. *State v. Gray,* 37 *N. J. L.* 368 (*Sup. Ct.* 1875), Van Syckel, J. See also *Caprio v. Home of Good Shepherd of Newark,* 91 *N. J. L.* 14 (*Sup. Ct.* 1917); *State v. While,* 103 *N. J. L.* 153 (*E. & A.* 1926).

The great weight of authority sustains the rule that where a valid sentence has been put into execution, the trial

court cannot modify, amend, or revise it in any way, either during or after the term or session of the court at which the sentence was pronounced. Any attempt in this direction is wholly ineffectual and the original sentence stands. 168 *A. L. R.* 706, 707.

■ And the whole or partial payment of a fine pursuant to a valid sentence is tantamount to commitment of the defendant within the sense and meaning of the rule forbidding amendment or modification of a valid sentence in a criminal case after the defendant has been committed. *Yavorsky v. United States,* 1 *F.* 2d 169 (3 *Cir.* 1924); *Santis v. Esola,* 50 *F.* 2d 516 (9 *Cir.* 1931); *Frankel v. United States,* 131 *F.* 2d 756 (6 *Cir.* 1942); *Silver v. State,* 37 *Ariz.* 418, 295 *P.* 311 (*Sup. Ct.* 1931); *Rupert v. State,* 9 *Okla. Cr.* 226, 131 *P.* 713, 45 *L. R. A., N. S.,* 60 (1913). See 168 *A. L. R.* 706, 719; also *Oxman v. U. S.,* 8 *Cir.,* 148 *F.* 2d 750, 159 *A. L. R.* 161.

■ R. R. 8:7–11 provides that the court (a) "may correct an illegal sentence at any time," and (b) "may reduce or change a sentence within 60 days from the date of the judgment of conviction, but not thereafter." This rule of court modified the common-law limitations in this regard; but it was not designed to authorize an enlargement of the punishment after the sentence imposed had been satisfied and the defendant discharged. The rule is necessarily to be assessed in the context of the basic civil rights of the defendant.

In the federal jurisdiction, amendment of the sentence, even after its execution has begun, is permissible provided the punishment is not augmented. *United States v. Benz, supra.* There, Mr. Justice Sutherland said: "The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made"; they "are then deemed to be 'in the breast of the court' making them, and subject to be amended, modified, or vacated by the court"; the rule "is not confined to civil cases, but applies in criminal cases as well, provided the punishment be not augmented," citing *Ex parte Lange,*

*supra;* the "distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the 5th Amendment to the Constitution, which provides that no person shall 'be subject for the same offense to be twice put in jeopardy.' This is the basis of the decision in *Ex parte Lange, supra."* Justice Sutherland adopted Justice Miller's view that the "Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it"; and he repeated what was there said by way of application of the principle to the facts of that case, where the defendant had paid the fine and had undergone five days of the one year's imprisonment first imposed: "Can the court vacate that judgment entirely, and without reference to what has been done under it, impose another punishment on the prisoner on that same verdict? To do so is to punish him *twice* for the same offense. He is not only put in jeopardy twice, but put to actual punishment twice for the same thing." The *Lange* doctrine was thus reaffirmed in its essential content of constitutional principle quite immune to legislative or judicial impairment.

Where the prisoner was sentenced to imprisonment under a conviction on a state statute enacted after the offense was committed, and therefore not constitutionally applicable to that offense, the sentence "was not void, but voidable," and the prisoner, in prosecuting his writ of error to a reversal of the judgment, "voluntarily accepted the result" and so came within the rule that "a convicted person cannot by his own act avoid the jeopardy in which he stands, and then assert it as a bar to subsequent jeopardy"; if, said Chief Justice Fuller, the "voidable" sentence "had been complied with he could not have been punished again for the same offense," but "as the original sentence was set aside at his own instance he could not allege that he had been in legal

jeopardy by reason thereof." *Murphy v. Massachusetts,* 177 *U. S.* 155, 20 *S. Ct.* 639, 44 *L. Ed.* 711 (1900).

Again the doctrine of *Lange* was applied; and the Chief Justice stressed that "this is not a case in which the court undertook to impose *in invitum* a second or additional sentence for the same offense, or to substitute one sentence for another," but rather that the defendant "availed himself of his right to have the first sentence annulled so that another sentence might be rendered," under a prior statute found to be still in force, contrary to the defendant's contention. Reference was made to *Brown v. New Jersey,* 175 *U. S.* 172, 20 *S. Ct.* 77, 44 *L. Ed.* 119 (1899), reiterating the principle that "the state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the Federal Constitution."

In a subsequent case, the defendant was sentenced to imprisonment for six months and fined $500 on a conviction for contempt; he was subject to a fine or imprisonment, but not to both; he was committed September 28, 1942, and three days later, October 1, his attorney paid the fine to the clerk of the court; later that day the judge amended the sentence to exclude the fine. The Federal Supreme Court held the prisoner was entitled to a discharge. *In re Bradley,* 318 *U. S.* 50, 63 *S. Ct.* 470, 87 *L. Ed.* 608 (1943). Mr. Justice Roberts said:

"When, on October 1, the fine was paid to the clerk and receipted for by him, the petitioner had complied with a portion of the sentence which could lawfully have been imposed. As the judgment of the court was thus executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court was at an end. It is unimportant that the fine had not been covered into the treasury; it had been paid to the clerk, the officer of the United States authorized to receive it, and petitioner's rights did not depend upon what that officer subsequently did with the money"; the "subsequent amendment of the sentence could not avoid the satisfaction of the judgment, and the attempt to accomplish that end was a nullity"; and "(s)ince one valid alternative provision of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraint."

And in a more recent case, *Bozza v. United States,* 330 *U. S.* 160, 67 *S. Ct.* 645, 91 *L. Ed.* 818 (1947), the statute carried a "minimum mandatory sentence of fine of $100 *and* imprisonment"; in announcing sentence at a morning session, the trial judge mentioned imprisonment only; thereafter the defendant "was taken briefly to the U. S. Marshal's office and then to a local federal detention jail awaiting transportation to the penitentiary where he was finally to be confined"; "about five hours after the sentence was announced, the judge recalled the [defendant] and * * * stated in the presence of [defendant] and his counsel" that it had been called to his attention that "there are certain mandatory fines and penalties which" he had "omitted to impose," and "a one hundred dollar fine was [then] fixed, as required by law, along with the imprisonment sentence," a course of action asserted to be double jeopardy.

The Supreme Court, by Mr. Justice Black, said: "It is well established that a sentence which does not comply with the letter of the criminal statute which authorizes it is so erroneous that it may be set aside on appeal," citing *Murphy v. Massachusetts, supra,* "or in *habeas corpus* proceedings," citing *In re Bonner,* 151 *U. S.* 242, 14 *S. Ct.* 323, 38 *L. Ed.* 149 (1894); but "in those cases it was recognized that an excessive sentence should be corrected, even though the prisoner had already served part of his term, not by absolute discharge of the prisoner, but by an appropriate amendment of the invalid sentence by the court of original jurisdiction, at least during the term of court in which the invalid sentence was imposed. * * * In the light of these cases, the fact that [defendant] has been twice before the judge for sentencing and in a federal place of detention during the five hour interim cannot be said to constitute double jeopardy as we have heretofore considered it." Answering the contention that "correction of this sentence so as to make it lawful increases his punishment," it was said: "If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all. * * * This

Court has rejected the 'doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence,' " citing *In re Bonner, supra.*

Thus, an "inadvertent error" in the sentence, the omission of the mandatory fine of $100, was corrected on the very day of sentence, presumably during that day's session of the court, before execution of the sentence had actually begun, and the seeming alternative would have been the prisoner's escape from "punishment altogether." Three Justices dissented on the ground that the "evidence in the case and the instructions given the jury seem to us inadequate to sustain the conviction," and Mr. Justice Rutledge, one of the three, said that in view of their conclusion, he would reserve expression of opinion concerning the "legality of the sentence." But that is not this case.

In a later case in the Second Circuit Court of Appeals, *United States v. Rosenstreich,* 204 *F.* 2d 321 (1953), the defendant was sentenced June 30, 1952 on a conviction for conspiracy (a) to pay a fine of $1,000, to be paid within a week, and to stand committed until the fine was paid, and (b) to be imprisoned for one year, execution to be suspended and defendant to be placed on probation; July 8, 1952, the judge vacated the sentence and resentenced defendant by (1) increasing the fine to $10,000 and (2) by imposing imprisonment for a term of one year less ten days with suspension of execution and probation as before. The judgment was reversed.

Judge Frank said:

"It is well settled that, thanks to the double-jeopardy provision of the Fifth Amendment, a federal court may not increase (a) a sentence of imprisonment, once execution of the sentence has begun, or (b) a sentence to pay a fine, after the fine first imposed has been paid. We think that, for this purpose at least, probation * * * which has been called an 'authorized mode of mild and ambulatory punishment' * * * should be deemed the equivalent of imprisonment. A probationary period starts when the judge imposes sentence. * * * We think that the sentence imposed on June 30 must be considered a unit. Accordingly, it had been executed in part before July 8, and the judge's action on that day, by augmenting the fine, was beyond his lawful powers."

Judge Augustus N. Hand, concurring, suggested doubt that "placing the defendant on probation started the execution of his sentence," since "three Justices of the Supreme Court have indicated that there is no constitutional bar to increasing a sentence if probation has started and later been revoked and the majority opinion did not reach the constitutional issue," citing *Roberts v. United States,* 320 *U. S.* 264, 64 *S. Ct.* 113, 88 *L. Ed.* 41 (1943), but that "here it appears that the defendant's counsel had the money in court with which to pay the fine before it was increased," and "the readiness and ability to pay the fine (even absent the formal act of a tender) should operate as the equivalent of its payment."

 Here, the original sentence conformed to the statutory command for a first offense; indeed, if the defendant were then sentenced as a second offender on the record then made, the sentence would have been a nullity. It was and is a jurisdictional precondition to sentence for a "subsequent" offense that there be a finding of a prior conviction of an offense of like kind, on proof *aliunde* adduced at a hearing on notice. And thus it is that the sentence imposed at the outset was valid, by the record made; and upon payment of the fine, the sentence was fully executed and the power of the court exhausted. Such is the principle of the New Jersey case of *State v. Gray, supra,* where an excessive sentence of imprisonment was held to be "manifestly illegal" and not subject to judicial correction by resentence "after the term at which it was pronounced is ended, or the judgment is executed, and the punishment partly borne." See *Murphy v. Massachusetts, supra.*

Once the sentence has been executed, it would seem that on the plainest principles of justice the jurisdiction of the court to increase the punishment is at an end, and this in despite of the statutory policy of enlargement of the penalty for a prior offense of the same class. Certainly, one could not be resentenced under the Habitual Criminal Act, *N. J. S.* 2A:85–8 *et seq.,* after he had served his sentence on a conviction not brought within that statute. *N. J. S.* 2A:85–13

provides that if "at anytime, before sentence," a prior conviction is made to appear, the county prosecutor shall file an accusation charging the previous conviction, and there . shall then be a hearing on notice to determine the fact. But this proceeding can be had only before sentence. The act so declares in explicit terms.

In a word, the elements of a "subsequent" offense under *R. S.* 39:4–50 are the same; the repetition of the transgression aggravates guilt and augments the punishment.

And the defendant was under no duty to disclose the earlier conviction of a like offense, no more than he was obliged to confess his guilt of the "subsequent" offense laid to him.

The second provision of *R. R.* 8:7–11 authorizes the reduction of the sentence imposed within the time thus prescribed, modifying the general rule that a sentence may not be altered after it has been put into execution, even by way of mitigation of the punishment; the first, permitting the correction of an "illegal" sentence "at any time," taken from *Rule* 35 of the *Federal Rules of Criminal Procedure,* cannot interfere with the fulfillment of basic civil rights. *State v. Culver,* 23 *N. J.* 495 (1957), concerns the reduction of an "illegal" life sentence under *N. J. S.* 2A:85–12, affecting fourth offenders, to aggregate sentences of 23 to 35 years, with credit for time already served, seven years, as against the prisoner's contention that jurisdiction to correct by reducing the sentence had come to an end, and he was entitled to discharge from imprisonment on *habeas corpus.* There is an obvious distinction in this regard between an increase and a decrease of the punishment illegally imposed, especially where it is done at the instance of the prisoner. But there is no occasion to pursue that inquiry; we are concerned only with the specific issue raised here.

And the statutory forfeiture of the defendant's license to drive a motor vehicle is an automatic process, in no sense an unexecuted part of the sentence during the period of the ordained disability. By force of the statute, the license becomes forfeit the instant the judgment of conviction is

entered, just as much so as the loss of the right of suffrage attending a conviction of crime having that consequence; and the sentence cannot be deemed executory until the period of disability expires. That would be contrary to all reason.

Highway security is of supreme public concern; yet the enforcement of penal laws to that end cannot be had at the sacrifice of the fundamental fairness that by constitutional mandate, federal and state, is of the very essence of punitive prosecutions. The remedy against such lapses as we have here is largely administrative, simple enough and feasible —adequate inquiry before the imposition of sentence. The due course of justice demands no less.

We express no opinion as to the power of the Motor Vehicle Division Director in relation to the revocation of the driver's license of an offender of the given class "in accordance with the statutory mandate," absent a "formal resentencing." The question is not now before us.

Reversed.

WACHENFELD, J. (dissenting). In this traffic case, our highest court detours justice upon the circuitous reasoning that (1) Laird's first sentence was valid, (2) it was completely executed before resentencing, (3) he was denied procedural due process, and (4) his resentencing put him in double jeopardy.

In fact, (1) the first sentence was invalid because it contravened the mandatory legislative direction to assess a more severe penalty; (2) it had not been completely executed since the two-year period for which Laird's license had been suspended had not yet run; (3) there was no deprivation of due process since the defendant had ample notice and opportunity to be heard; and (4) double jeopardy was not an issue since the second sentence merely corrected an illegal sentence, before its complete execution, by imposing the lawful punishment demanded by the Legislature.

Much of the majority opinion rests upon what a certain jurist said in 1874, before the automoblie was invented and before traffic became a hazard. His knowledge could not

help solve the pressing safety problems of today caused by the millions of automobiles on our roads, of which he was oblivious and could not possibly have envisioned. Nothing demonstrates more clearly that the principles of one age are frequently invalidated by the developments of another.

Realistically, we provided in *R. R.* 8:7–11 that the court "may correct an illegal sentence at any time."

Here, in substance, a drunken driver, a second offender, a menace to the highway, escapes the penalty imposed on every one else in his class, and the traffic court, by our edict, is prevented from doing what should have been done in the first instance.

The offense was considered so serious by our lawmakers that they deprived our courts of their usual discretion in sentencing.

The severity of the mandatory punishment of a second offender is known to every driver as well as every pedestrian. Laird undoubtedly knew, when he first appeared for sentencing, that he was a second offender. His silence and the deliberate withholding of his actual status materially contributed to the court's pronouncement of an illegal sentence.

Our decision ratifies the fraud practiced upon the court below and stymies its effort to comply with the law, thus permitting the early return to the highway of a proven menace.

I cannot subscribe to the reasoning or logic, legal or otherwise, bringing about such a result.

The "plainest principles of justice," the standard set by the majority, clearly call for the affirmance of the judgment below. "Fundamental fairness" should at least occasionally be enjoyed by the public as well as the wrongdoer.

I am to affirm.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS and FRANCIS—5.

*For affirmance*—Justice WACHENFELD—1.