Ex parte Paniagua et al., Petitioners.

Review in Habeas Corpus Proceedings.

No. 2339.—Decided January 20, 1925.

Habeas Corpus—Courts—Jurisdiction—Presumption. — Courts of record are presumed to have jurisdiction until the contrary is clearly shown.

Id.—Contempt of Court.—In the absence of the complaint, evidence and judgment in the action giving rise to proceedings for contempt the Supreme Court can not determine in habeas corpus proceedings whether the order which was disobeyed was made without jurisdiction.

Id.—Id.—Jurisdiction.—Contempt proceedings can not be reviewed by habeas corpus unless it be shown that the court was without jurisdiction of the person or of the subject-matter.

Id.—Id.—Commitment.—A commitment containing an order of a jurisdictional court in a proceeding and showing the nature of the act done in disobedience of that order is sufficient authority for the jailer.

Id.—Id.—Judicial Order—Certiorari.—After an order is entered against the defendant in the principal action the fact that he brings certiorari proceedings to review it does not relieve him from obeying the order.

Id.—Id.—Id.—Disobedience of Judicial Order—Corporation.—When a banking corporation improperly collects funds due to a receiver, or disobeys an order of court, the officers connected with the matter may be punished for contempt.

Id.—Id.—Id.—A bank having been ordered by a court to refund money improperly collected, the fact that it paid a part of it does not exempt one punished for contempt for disobedience of the order if the deficit is due to the unlawful act of the person punished.

Id.—Id.—Id.—If the manager of a bank collects an amount which the court orders the bank to deposit in court, such person is then an officer of the bank and the particular person against whom a rule for contempt may be issued.

Id.—Id.—Id.—Whether a proceeding for contempt is civil or criminal is a question that can not be determined in a habeas corpus proceedings. The distinction between criminal and civil contempt is not clear in Porto Rico.

Id.—Id.—Imprisonment for Debt.—To order a bank or its manager to deliver money improperly collected and punish disobedience of such an order is not imprisonment for debt.

ON RECONSIDERATION.

Decided March 31, 1925.

Contempt—Courts of General Jurisdiction— Presumption — Jurisdiction.— When a court of general jurisdiction enters an order punishing a person for contempt because of disobedience of an order made in an action mentioned therein the presumption arises that the court has jurisdiction of the subject-

matter and that the action to which the disobedience refers was within its jurisdiction.

HABEAS CORPUS—CERTIORARI.—Proceedings in certiorari are available only for bringing up to the appellate court questions which appear on the face of the record, but not for incorporating evidence into the record of a habeas corpus proceeding.

The facts are stated in the opinion.

*Mr. A. Arroyo Rivera* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The appellant, in an appeal from an order denying his release on habeas corpus, assigns twelve errors. Most of these assignments directly or indirectly attack the jurisdiction of the District Court of San Juan to make the order for which the prisoner was cited for contempt and therefore we must first examine the transcript to see whether it contains sufficient evidence to show that the district court was without such jurisdiction. As the District Court of San Juan is a court of record, the presumption of jurisdiction exists until the contrary clearly appears.

The District Court of San Juan, according to the return, adjudged the appellant in contempt for failure to obey an order. We have no doubt that when a district court is without jurisdiction over a person or the matter in controversy, the person adjudged in contempt may obtain his release by a writ of habeas corpus.

The appellant, before Mr. Justice Franco, to whom the petition in habeas corpus was presented, offered in evidence the proceedings in a writ of certiorari which had been denied by this court. The refusal of the judge to hear evidence as to the admissibility of this record nominally was that he could take judicial notice of it.

From the transcript it transpires that Mr. Justice Franco understood that the record in certiorari was being offered for limited purposes and largely to show that during the pendency of the writ of certiorari in this court the judgment of the district court was suspended and parties were

released from its binding affect, or some equivalent propo-
sition. The appellant at no time offered the said record
in certiorari to show the state of the proceedings in the
district court. There was no offer to prove the complaint,
evidence and judgment of the district court in the principal
suit, the forerunner of the contempt proceedings.

The first assignment of error relates to the refusal of
Judge Franco to admit evidence in regard to the judgment
of the lower court. Even if the judge was mistaken in
supposing that he could take notice of the certiorari record
without. further evidence, we can not see how that certiorari
record would properly tend to show the proceedings in the
principal suit. The certiorari had been denied. The record
certified from the district court had presumably been. re-
turned to it. The error of Judge Franco, if any in this
regard, was harmless. This was not the ordinary way, if
allowable at all, to prove any state of proceedings in the
District Court of San Juan. It is true that appellant also
offered in evidence the proceedings in the contempt case.
He did not, however, offer these proceedings to prove the
notice of the principal suit. There is no assignment of
error distinctly on this ground, and appellant himself says
that the refusal of Judge Franco to admit the contempt
proceeding was of less importance than the refusal to ad-
mit the certiorari record. Judge Franco's refusal to ad-
mit the contempt proceedings was based on the fact that
the matter offered was already before the court by virtue
of the return. Again, the error, if any, was harmless be-
cause of the lack of a sufficient offer.

We have not before us in this case either the complaint,
evidence or judgment in the principal suit. Without these
records before us we can not say positively what was the
exact nature of the suit presented in the district court.
We can not say, therefore, that the order supposed to be
violated was rendered without jurisdiction. On the contrary,
jurisdiction must be assumed. Assuming jurisdiction in the

said district court, Mr. Justice Franco was evidently right when he held that in a habeas corpus proceeding no inquiry may be made of the power of a court to punish for contempt. The transcript before us does not reveal that Mr. Justice Franco had anything before him to show that the said district court was without jurisdiction.

It is evident that for a lack of a proper basis we are not in condition to review most of the assignments of error. The impossibility of review applies to the second assignment of error. Judge Franco decided that under a writ of habeas corpus contempt proceedings ordinarily could not be reviewed. We have no doubt of the law in this regard. *Ex parte Pesquera,* 17 P.R.R. 706; *Ex parte Le Hardy,* 17 P.R.R. 885; *Ex parte Hollis,* 59 Cal. 406, cited by appellant. To bring himself within an exception appellant would have had to demonstrate that the District Court of San Juan was without jurisdiction.

The third assignment of error assumes apparently that the jurisdiction of the District Court of San Juan to punish for contempt should appear from the commitment and the return to the writ of habeas corpus. The commitment contained an order of a competent court in a proceeding. It showed more. It showed the nature of the act of disobedience to the order of the court. It was sufficient authority for the jailer.

As to the alleged rights of the Bank of San Juan to which the fourth assignment of error relates, we can not see how the commitment in itself shows whether the bank was guilty of contempt or not. The contempt would depend upon the jurisdiction in the principal suit, the lack of which has not been made apparent. The appellant insists that the original suit was one in law and not in equity and that the powers of the District Court of San Juan were not "equitable," but these are facts that can not be determined without the record in the principal suit. If the latter, for example, had for its object the recovery of a

piece of land and all the conversions thereof, as the judge of the district court intimates in his opinion, then any action of the appellant by which such converted funds were diverted from the custody of the receiver appointed in the case could be recovered by the latter. The bank was before the court and the appellant was confessedly the administrator thereof. The fact that the certiorari momentarily suspended the effect of the judgment did not avail the bank. Pending the disposition of the certiorari proceeding the bank and its officers were bound to respect the judgment, and it would have to be assumed that the receiver appointed after judgment had power to conserve the fund, funds or converted property. None of these matters, as decided by Judge Franco, could be reached by a writ of habeas corpus, assuming as we must the jurisdiction of the district court.

The fifth assignment says that the court had no jurisdiction over the person of the appellant. The proceedings, however, show that the appellant was the manager of the bank, the defendant in the principal suit, and that said appellant was ordered by the court to pay a specific amount and refused. Appellant comments on the fact that it did not appear from the return that he was the administrator or manager of the bank. Any silence of the record before us would militate against the appellant, as we have no knowledge of the extent of the principal suit or the proceedings subsequent thereto. The original petition, however, under "C" of its reasons for the illegality of the imprisonment of the then petitioner said that the order complained of was directed solely to Bartolomé Paniagua, Manager (*gerente*) of the Bank of San Juan. The rest of the petition attempts to set up the good faith and other justification of said *gerente*. The amended petition makes similar statements, and so does the brief. Indeed, the brief on page 5 admits that Paniagua was the *gerente* and officer of the bank. Judge Franco had the right to assume that

the appellant was not only an officer of the bank but the principal officer. Furthermore, it was the appellant, whatever his capacity, who collected the money. Whether he was notified as an officer or agent of the bank or as an individual makes little difference. He was notified and ordered to turn the money over to the receiver and we have nothing before us, if an available defence, that would show that petitioner made a due complaint of any lack of notice.

The case of *State ex rel. Boardman* v. *Ball,* 31 Pac. 975, is cited. We are quite agreed, similarly as in that case, that the appellant did not become a party to the principal suit merely because the summons was served upon him. It is admitted, however, that the order to turn the funds over to the receiver was served on the appellant. The latter, it appears, had been the officer who collected the moneys which Judge Foote thought should be turned over to the receiver. If appellant, a supposition not excluded by the record, was not a party in the principal suit, he was directly and distinctly drawn into proceedings looking to the turning over of the money to the receiver, and apparently, as officer or otherwise, resisted the payment. Furthermore, as we have said, he was the principal officer concerned in the collection. In the *Boardman Case, supra,* the president of the bank took no adverse action to the receiver. He merely refused to turn over property actually in possession of the bank. The funds did not come into his possession or were not collected as here *post motam litem.* The appellant was the principal man concerned in the litigation. We find no close analogy in the *Boardman Case.* Until we are strongly convinced to the contrary we feel bound to hold that when a corporation unduly collects funds due to a receiver, or disobeys an order, the officers concerned may be punished vice the bank. To this effect is Thompson on Corporations, Edition of 1894, Vol. 5, sec. 6450.

The present inability of the bank to comply with the order of the court does not appear from the return or the

commitment. It does not appear that the bank was insolvent, nor yet that the appellant was. If the order of the court in the contempt incident be examined it will appear that the court ordered the bank to pay into court some $800 unduly collected. The allegation of a present inability perhaps appears in said order, but not the actual inability. If appellant collected certain sums of money for the bank under a claim of right and paid out certain other sums to conserve the estate, it does not follow that the money paid out was the exact money paid in or that appellant or the bank has not other money to compensate for the money actually collected. We are inclined to agree, moreover, with the *fiscal* that if the shortage was due to the wrongful act of appellant, this shortage can not be alleged to purge appellant of contempt. This disposes of the sixth assignment of error.

The seventh assignment of error also relates to some of the matters previously discussed. How far the appellant was responsible for the acts of the bank would depend on what had happened in the principal suit. We are of the opinion, however, that if appellant was the manager of the bank and as such officer made the collection which the court ordered the bank to bring into court, appellant is an officer of the bank and especially the person against whom a contempt might issue.

As to whether the proceeding against appellant for contempt is a civil or criminal contempt, that is a matter which can not be reached in a habeas corpus proceeding. In *Gompers* v. *Buck Stove, etc., Co.,* 221 U. S. 418, cited by appellant, to show the difference between a civil and a criminal contempt, the review was by reason of a writ of certiorari. In the present case, from the indication of the judge's opinion and from the form of the commitment, being for a definite term of fifteen days, it is evident that the district court was proceeding against appellant for a statutory contempt in its nature perhaps criminal. It is pointed

out in the *Gompers Case, supra,* that the distinction between a civil and criminal contempt is not always easy, but the whole matter in Porto Rico is governed by our statutes. The Act of March 8, 1906, statutes of that year, provides:

"Sec. 3. (146)—When contempt is committed in the immediate presence and view of the court, the punishment therefor may be imposed immediately by the judge of the court, or the presiding judge thereof. When such a person is charged with contempt committed out of the presence of the court, no conviction can be had thereon unless the person so charged shall have been given an opportunity to appear and defend against the charge, and whenever a person is fined or committed to jail for a contempt of court, an order or warrant for such fine or imprisonment must be signed by the judge delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances, and specifying the sentence of the court; otherwise such sentence will be wholly invalid and inoperative."

Section 4 abolishes section 145 of the Penal Code. The said section 145 permitted a prosecution for contempt as for a crime, but the Act of 1906 put the whole power to punish for contempt as such directly and exclusively in the hands of the court. The distinction between civil and criminal contempts is, therefore, even less evident in Porto Rico. All that section 3 requires is that the alleged offending person be given notice and an opportunity to defend in the form provided by the law. Hence the title of the proceeding is not of importance so long as the defendant may identify the proceeding. In the said *Gompers Case* it is only insisted that it would have been proper to entitle the cause United States v. Samuel Gompers et al., or In Re Samuel Gompers et al., but the decision did not depend on the entitling. The appellant here, as was said in that case, could see whether the proceeding "was instituted for private litigation or for public prosecution or whether it sought to benefit the complainant or vindicate the court's authority." The bank was ordered to turn over certain funds

and it was the disobedience of this order that was being punished.

The tenth and eleventh assignments of error refer to the fact that the receiver might have recovered the collected money by suit. We hold that even if so recoverable, we have not sufficient before us to say that the court could not reach the fund by a rule to show cause and then punish for disobedience.

The twelfth assignment of error relates to an alleged imprisonment for debt. It does not appear that this question was raised in the contempt proceeding, and this constitutional privilege must be duly raised and may be waived. Incidentally we may add that to require a bank or its manager to pay over money wrongfully collected and to punish for disobedience does not appear to be an imprisonment for debt. The punishment is not for failure to pay a debt due under a contract or *ex contractu,* but for a refusal to deliver to the receiver money wrongfully collected (an obligation *ex delicto*), which the court below held the receiver alone had the right to make.

Up to the writing of this paragraph we had tacitly assumed that we had a due certificate of the testimony taken before Judge Franco. Some question arising in discussion as to the purpose of the various offers of appellant during the hearing of the writ led us to examine the record more closely and we find that there is no certificate of any kind from Judge Franco. It is evident that appellant should not have relied on the stenographer alone, but if he wanted to make his offer known, appellant should have requested Judge Franco to make additions and have had him certify the whole evidence.

As no infraction of procedure or lack of jurisdiction appear on the face of the record certified to us, the order appealed from must be

*Affirmed.*

## ON RECONSIDERATION.

Opinion of the Court delivered by MR. JUSTICE WOLF on March 31, 1925.

A motion for reconsideration brings before us several matters which we shall briefly discuss.

There is no doubt that a jailer to justify the detention of a prisoner has the burden of proof of showing an order of a competent court. Of course we did not say in our opinion as petitioner intimates that the order by which a jailer holds a prisoner is presumed to be legal. No such presumption arises. What we do hold is that when an order issues out of a court of general jurisdiction, punishing a person for contempt for refusal to obey an order issued in a particular case, named in the order, a presumption arises that the court had jurisdiction over the subject matter of the suit and that the subject matter, to which the refusal to obey relates, was within the said jurisdiction. Section 327 Code Criminal Procedure; *Ex Parte Blasco,* 7 P.R.R. 455. Otherwise it would be necessary in every case of habeas corpus to show the summons, the nature of the complaint and other matters that go to make jurisdiction. This principle is summed up to a certain extent in 29 Corpus Juris, 167, as follows:

"The presumption of the legality and regularity of judicial proceedings attaches when a party, imprisoned under an order or process of court, seeks relief therefrom on *habeas corpus;* but such presumption may be rebutted."

When a witness refuses to answer a question and is sentenced on contempt as in *Ex Parte Hoar,* 146 Cal. 132, the power of the court to compel the particular answer should be shown. In other words, the jurisdiction in contempt. This is a different matter from the necessity of showing the jurisdiction of the court over the suit out of which the contempt arose. We have already discussed that, given the jurisdiction of the court to appoint a receiver and

order the payment to him of money unduly collected, the fact of such undue collection sufficiently appeared in the order of imprisonment.

The reasons why we discussed some of the assignments of error, despite the lack of a statement of the case, appear sufficiently in our main opinion. Perhaps some of it was obiter. This cannot affect the failure of appellant to prepare a due statement of the case and have it approved by Mr. Justice Franco. It can make no difference that in some other case once before this court the testimony of the witnesses was not reduced to form. Counsel is bound to know the method of incorporating evidence and making it a part of the record.

As to the suggestion at the hearing that a certiorari might lie to bring up matters not otherwise before us and the reference to *Ex Parte Lange,* 18 Wall. 163, such a certiorari only could avail petitioner to bring up matters already of record and could not help him to incorporate the evidence.

To give the petitioner a chance to arrange his affairs the mandate will be further retained for three days.

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Franco Soto took no part in the decision of this case.